## THE BRANCH BANK AT MONTGOMERY v. HODGES

1. A bill in equity, by which a *feme covert* asserts her marital rights against her husband; or seeks to have settled to her separate use, property, which he has purchased with her separate funds, is not such a proceeding *in rem*, as to make the decree therein rendered, conclusive on all persons; but is binding only on the parties to it.

Writ of Error to the Circuit Court of Barbour.

A WRIT of *fieri facias* issued from the circuit court of Mont-

gomery, against the goods and chattels, &c. of John P. Booth and others, which was received by the sheriff of Barbour, on the 7th September, 1846, and levied by him on the following day, on a male slave named Bob, as the property of Booth. Thereupon the defendant in error made an affidavit, and executed a bond with surety, to try the right, pursuant to the statute. An issue was accordingly made up and submitted to a jury, who returned a verdict for the claimant, and thereon judgment was rendered.

On the trial, the plaintiff in execution excepted to the ruling of the court. It is shown by the bill of exceptions, that the plaintiff proved the levy of the *fi. fa.*, the value of the slave, and the declarations of the defendant in execution, while he was in his possession. Other evidence was adduced, that Booth had won Bob at a game called *Faro*, in the year 1838, while he was the husband of the claimant's *cestui que trust*, Martha R. W. Booth. Evidence was also offered by the claimant, showing that Booth, the husband, had purchased the slave with the notes of one Sawyer, together with his declaration at the time of the purchase; that he intended the slave for one of his "chaps." Claimant then adduced an antenuptial settlement, dated in the year 1833, securing to the *cestui que trust*, certain property therein mentioned, but not embracing the slave in question. In this deed it was stipulated that the real estate and slaves devised to Mrs. Booth, by her father, and all other property which she might thereafter inherit, should be held and remain their separate and distinct estate, not subject to any other disposition, save only by the consent of herself and trustee : it was also stipulated, that the property embraced by the deed should "be and remain in the possession of said Booth, after said marriage, for the benefit of the parties."

Claimant introduced a decree of the court of chancery holden in Barbour county, at the November term, 1845, founded on a decretal order *pro confesso*, in which cause Mrs. Booth, by the complainant as her next friend, was complainant, and her husband was defendant. By that decree, the marriage settlement referred to, was reformed, and the slave in ques-

tion was secured to Mrs. Booth, as having been purchased with her separate funds. To the admission of this decree the plaintiff objected, but the objection was overruled, and the evidence admitted.

Plaintiff then adduced evidence to prove that Booth, the husband, was indebted to him and others when the decree was rendered, and that he was insolvent at that time. The court charged the jury, that the decree was a sentence *in rem*, and conclusive not only upon the rights of the parties and privies in this court, unless attacked for fraud, but upon the whole world; and that the title vested by the decree was paramount to any other title; whereupon the plaintiff excepted.

P. T. Sayre, for the plaintiff in error, insisted, that the decree proved nothing as against the plaintiff, who was a pre-existing creditor. As evidence it was entitled to no more influence than a deed of gift, or other conveyance, from Booth, the husband, for the benefit of his wife. It should have been shown by evidence *aliunde*, that Bob was purchased with the money of Mrs. Booth. The law is well settled, that a judgment or decree is evidence of the matters adjudicated between parties and privies only; in respect to other persons, they are only admissible to prove the fact, that they were rendered. [1 Stark. on Ev. 6 Am. ed. 217; 1 Greenl. Ev. 3d ed. 672, 687; 7 Port. Rep. 476; 9 Id. 412; 7 T. Rep. 2.]

The decree is not *in rem*. Such a decree can only be pronounced by a court exercising peculiar jurisdiction, which enables it to pass upon the nature and qualities of a particular subject matter, of a public nature and interest, independently of any private party; such as bankruptcy, marriage, bastardy, testamentary matters, decisions in courts of admiralty, and adjudications upon questions of settlement. [1 Stark. Ev. 240.] A decree *in rem* can only be rendered in a proceeding in which any and every one may make him or themselves a party or parties. [Norris' Peake, 123; 9 Cranch's Rep. 126.] To make a decree *in rem* binding, the parties affected must have personal notice, or the thing itself must

be operated upon by process, or so affected as to warrant the implication of a notice to the person.

J. Buford, for defendant in error. The decree was admissible to prove the fact of its rendition, and as a link in the claimant's title. [1 Greenl. Ev. 1st ed. §§ 538, 539.] The object of the bill was to reform the antenuptial settlement, and to obtain a title to Bob, who had been purchased with the funds of Mrs. Booth ; this indicates, that as it respects the slave in question, the decree is *in rem*, and can only be attacked for fraud, either by pre-existing creditors, or others whose debts were subsequently created. [1 Greenl. Ev. § 550; 8 Johns. Rep. 173 ; 3 Camp's Rep. 126; 8 C. & P. Rep. 679; 14 Pick. Rep. 280; 12 Mass. Rep. 488; 4 Id. 147; 13 Id. 153; 5 Johns. Rep. 101; 3 Binn. R. 338; 4 T. Rep. 187; 4 S. & R. Rep. 557; 20 Johns. Rep. 229; 1 Conn. R. 1; 1 Stew. R. 500; 6 Porter's R. 219, 241; 10 Ala. R. 355, 796.]

COLLIER, C. J.—If it could avail the claimant any thing to show that a decree had been rendered, such as was adduced by him, the record was admissible to establish that fact. But the decree as against the plaintiff in execution, would prove nothing more. The fact that the slave was purchased with Mrs. Booth's money, or that her husband had, without authority, converted funds which were a part of her separate estate, and that the slave was settled on her as a substitute for the money, before the plaintiff's lien attached, should have been shown by extrinsic evidence.

It is certainly true, that a judgment or decree operates as evidence against strangers to the original suit, where the proceeding is, as it is technically called, *in rem.* This it is said happens where a court exercises a peculiar jurisdiction, which enables it to pronounce on the nature and qualities of a particular subject matter of a public nature and interest, independently of any private party. Within this class are comprehended cases relating to marriage and bastardy, where the ordinary has certified ; to sentences relating to marriages and testamentary matters in the spiritual court ; decisions of courts

16

of admiralty, judgments of condemnation in the exchequer, and adjudications upon questions of settlement. The general rule in such cases is, that such a judgment, sentence, or decree, if final in the court in which it is pronounced, is evidence against all the world, unless it can be impeached on the ground of fraud or collusion. This rule seems to be founded upon one or both of these considerations : *First,* because it is essential to the existence of such a jurisdiction, that its judgment should be binding in all courts. *Secondly,* because all who are interested in the result may become parties to the proceeding. [1 Stark. Ev. 227 to 243, 1st Am. ed.]

In the case of the Mary, 9 Cranch's Rep. 144, Chief Justice Marshall says, the decisions of a court of exclusive jurisdiction, are necessarily conclusive on all other courts, because the subject matter is not examinable in them. With respect to itself, no reason is perceived for yielding to them a further conclusiveness, than is allowed to the judgments and decrees of courts of common law and equity. They bind the subject matter as between parties and privies. The whole world it is said are parties in an admiralty cause, and therefore bound by the decision. Every person may make himself a party, and appeal from the sentence; but notice of the controversy is necessary in order to become a party, and it is a principle of natural justice, of universal obligation, that before the rights of an individual can be bound by a judicial sentence, he shall have notice, either actual or implied, of the proceedings against him. Where the proceedings are against the person, notice is served personally, or by publication; where they are *in rem* it is served upon the thing itself. A notice served on a thing, will give information to all who have any interest in it; every such person may therefore be considered a party. But those who have no interest which could be asserted are not presumed to have had notice, and can on no principle of reason or justice be regarded as parties. When a person thus situated is brought before a court, in which the fact is examinable, no sufficient reason is perceived for precluding him from re-examining it. That this is allowable where the judgment of a court of common law, or the decree of a court of equity is drawn in question, under such circumstances is said to be unquestionable ; and the learned

*Chief Justice* could perceive no reason why a different rule should prevail in a court of admiralty where its decree is there questioned by those who had no interest in the thing, that could be asserted there, and as to whom notice could not be implied.

This view of the law is quite sufficient to show, that a bill in equity, in which a *feme covert* asserts her marital rights against her husband ; or seeks to have settled to her *separate use*, property which he has purchased with her *separate funds*, is not such a proceeding *in rem* as makes the decree rendered thereon conclusive against the whole world. It is not essential to the jurisdiction exercised in such a case, that the decree should be binding in all courts, and as against all persons; nor would it be competent for all persons who might in future set up some claim to the property thus situated, or insist upon subjecting it to the payment of the husband's debts, to become parties to that proceeding; and upon no principle can they be charged with notice of its pendency. The consequences which attach to a proceeding and decree *in rem*, technically so called, cannot be applied in the present case, any more than in any suit in which specific property is recovered, or adjudged to be settled or conveyed in some particular manner. The principle which would warrant its application, would make a decree foreclosing a mortgage, or a judgment in detinue for the plaintiff, binding upon the whole world as to the facts determined. No such influence has ever been claimed for these, or cases of a kindred character ; and we have no doubt that upon principle and authority they are only binding upon parties and privies.

. The claimant was a creditor of the husband, previous to the decree in favor of Mrs. Booth. It then devolves upon her trustee to show, either that the husband never had a title to the slave in controversy, or that it had passed from him for a valuable consideration before the plaintiff acquired a lien by issuing execution. This cannot be done by the mere production of the decree. Even if it had been rendered upon an answer denying the allegations of the bill, it would not be evidence against the plaintiff who was a mere stranger ; much less can it conclude persons in that predicament,

where it is the result of a decretal order taking the bill *pro confesso*. If the defendant in execution had settled the slave by deed, on his wife, no one would pretend that such a deed, unassisted by extrinsic proof, would be evidence to affect a judgment creditor. Here the decree is entitled to no greater influence; for it is only the judgment of law upon facts alledged by the wife, and admitted by the husband. It is, as it respects the plaintiff, *res inter alios acta*—proves nothing but the fact of its rendition—the basis upon which it rests should have been shown by the claimant, by other and unexceptionable proof. The consequence is, that the law was incorrectly ruled by the circuit court. Its judgment is reversed and the cause remanded.