## HUNT, FROWNER, ET AL. *vs.* ACRE, JOHNSON, ET AL.

[BILL IN EQUITY, BY HEIRS OF MORTGAGOR, TO SET ASIDE DECREE OF FORECLOSURE, COMPEL ACCOUNT OF RENTS AND PROFITS, AND REDEEM MORTGAGED PREMISES.]

1. *Decree of foreclosure, conclusiveness and effect of.*—The effect of a decree of foreclosure under a mortgage is not so extensive as that of a decree in a proceeding *in rem:* it does not prejudice the rights of those who ought to be, but are not parties. If the mortgagor dies before the rendition of the decree, and the suit is thereupon revived against his administrator and sole devisee, and not against his heirs, the decree of foreclosure, and the complainant's purchase of the premises at the master's sale, are both void, as against the heirs of the mortgagor, if they set aside the probate of their ancestor's will, by bill in chancery, within the time allowed by the statute.

2. *Decree in chancery annulling probate of will, conclusiveness and effect of.*—A bill in chancery to set aside and annul the probate of a will is in the nature of a proceeding *in rem,* to which any person having an interest may make himself a party ; and the decree, annulling the probate, is final and conclusive, as to the validity of the will, in all courts and upon all persons, until set aside or reversed in some direct proceeding.

3. *Proper parties to bill of revivor in foreclosure suit.*—In a suit for the foreclosure of a mortgage, if the mortgagor dies before the rendition of the final decree, and his will is admitted to probate by the court having jurisdiction, his heirs-at-law, as well as his personal representatives and devisees, are proper parties to the bill of revivor, and the complainant proceeds without them at his peril, since they have the statutory right to impeach the probate of the will, by bill in chancery, at any time within five years.

4. *Discounting note at illegal rate of interest is usury, and available as defence against assignee.*—Discounting a note on a third person, eleven months before its maturity, at four per cent. per month, and taking the endorsement of the holder, with a mortgage on his property to secure its payment, do not constitute a *bona fide* purchase of the note, but a usurious loan ; and if the note and mortgage are then assigned to another person, at the same usurious rate of discount, and with notice of the usurious nature of the transaction, the mortgage is open in his hands to the defence of usury.

5. *Usury a defence to suit for foreclosure of mortgage.*—Usury in the transaction in which the mortgage had its origin, may be set up as a defence, *pro tanto*, to a bill for foreclosure ; and its effect, if established, is to discharge the party from the payment of any interest whatever on the debt.

6. *When legal interest must be paid on usurious loan.*—If a debtor comes into equity, for relief against a judgment at law, or other legal security, on the ground of usury, where he has by his own voluntary act deprived himself of the opportunity to appear and plead the usury in the character of defendant, he is required to pay principal and legal interest ; but this rule does not apply, in the absence of such voluntary act, where the heirs of the mortgagor come into equity to redeem the mortgaged premises, to set aside a decree of foreclosure, which was obtained by the creditor in a suit so conducted as to deprive them of the opportunity to appear and plead the usury, and to remove the cloud on their title created by the proceedings in the foreclosure suit.—(WALKER, J., *dissenting*.)

7. *Jurisdiction of equity to remove cloud on title.*—If the mortgagee obtains a decree of foreclosure against the personal representatives and devisees of the mortgagor, without making the heirs-at-law parties to the suit, and becomes the purchaser of the premises at the master's sale, this constitutes such a cloud on the title of the heirs, after they have set aside the probate of the will by bill in chancery, as authorizes them to ask the interposition of equity for its removal.

8. *Deed of widow, before assignment of dower, passes what interest.*—If the widow of the mortgagor, while in possession of the mortgaged premises, before dower is assigned to her, conveys by deed to the mortgagee, if her deed is effective for any purpose as against the heirs, her alienee certainly does not thereby acquire more than the right to retain one third of the rents and profits of the premises.

APPEAL from the Chancery Court at Mobile.

Heard before the Hon. J. W. LESESNE.

This bill was filed by the appellees, as heirs-at-law of Samuel Acre, deceased, to redeem a certain lot in the city of Mobile, under a mortgage executed by said Acre in his lifetime ; to set

aside a decree of foreclosure, obtained under the mortgage by Jonathan Hunt, one of the defendants, who was an assignee of the mortgage; and to compel an account of the rents and profits of the mortgaged premises. The widow of said Acre, with her present husband, James Frowner, who were the defendants in Hunt's foreclosure suit, and an infant heir-at-law of said Acre, are made co-defendants with Hunt. The material allegations of the bill are as follows:

That Acre was seized and possessed in his lifetime of the premises now in controversy, and was also the owner and holder of a certain promissory note for $5,026 61, executed by one John Milton, dated March 2, 1836, and payable two years after its date; that in April, 1837, eleven months before said note became due, Acre transferred said note to Charles Smith, who was the agent of said Hunt in the transaction, and executed to him a mortgage on said premises to secure its payment; that Acre only received from Smith $2,814 91, the note being discounted at the rate of four per cent. per month; that this amount was paid by Smith to Acre out of the funds of Hunt, for whom Smith was acting as agent; that a formal transfer, or assignment, of the note and mortgage, was made by Smith to Hunt a few days afterwards, but there was no consideration for it, and the whole transaction was a mere contrivance to shield Hunt from the charge of usury; that on the 9th October, 1838, said Hunt, claiming to be assignee of Smith, filed his bill in the chancery court at Mobile, against said Acre, who was then in a lunatic asylum under an inquisition of lunacy, for a foreclosure of said mortgage; that no answer or defence was put in by the guardian of said Acre; that said Acre died about the 12th November, 1838, intestate; that soon after his death, his widow produced before the orphans' court of Mobile a paper, purporting to be his last will and testament, in which she was made sole devisee of the mortgaged premises; that said paper was admitted to probate by said court, as the last will and testament of said Acre, without notice or citation to the heirs-at-law, and letters of administration were granted to the widow, in connection with the sheriff of the county; that Hunt afterwards made said administrators, together with James Frowner, with whom the widow had intermarried,

parties to his foreclosure suit by bill of revivor, and at the May term, 1840, they answered the bill, setting up a good defense to it; that no further proceedings were had in the cause until the April term, 1843, when said Frowner and wife abandoned their defense, and consented that a decree should go in Hunt's favor for the full amount of his claim.

The bill further alleges, that the complainants, as heirs-at-law of said Acre, who had not been made parties to Hunt's foreclosure suit, filed their bill in said chancery court, in December, 1841, against said Frowner and wife, to set aside the probate of said Acre's will, on the ground of his insanity at the time it purported to have been executed; that at the April term, 1843, on the same day the decree was entered by consent in Hunt's foreclosure suit, an issue at law was ordered by the chancellor to test the validity of said will, and at the April term, 1844, on the verdict of the jury, a decree was rendered, setting aside the probate of said pretended will, and declaring it null and void; that Hunt's solicitors in the foreclosure suit were also the solicitors of said Frowner and wife, in the suit to set aside the probate of the will, and as such had notice of all the proceedings; that at the April term, 1843, Frowner and wife, in consideration of $1,000, paid to them by Hunt, besides letting a decree go -against them by consent, executed a deed to said Hunt for the mortgaged premises; that this consideration was paid by Hunt for Mrs. Frowner's dower-right in the mortgaged premises, which was known by the parties to be the only right or title she had, and the transaction was intended to enable Hunt to get the immediate possession of the premises, so that he might claim title to the same as a *bona fide* purchaser from the pretended devisee; that Hunt went into possession of the premises under his deed from Frowner and wife, and also became the purchaser at the master's sale under the decree in his foreclosure suit; that the master's report of the sale was confirmed at the April term, 1844, and the master was ordered to make a deed to Hunt, which he did; that Hunt received from Milton, the maker of the note, the full amount justly due him, and ought to be charged with the rents and profits of the land from the time he went into possession.

The prayer of the bill is, that the decree of foreclosure

obtained by Hunt, his purchase at the master's sale, and his deed from Frowner and wife, may be set aside and declared null and void; that an account may be taken of the rents and profits of the mortgaged premises since they went into the possession of the defendants; that complainants may be put in possession of the premises; and for general relief.

A decree *pro confesso* was entered against Frowner and wife for want of an answer. A guardian *ad litem* was appointed for the infant defendant, who filed the usual formal answer. A guardian *ad litem* was also appointed for Hunt, who filed an answer, insisting on the regularity and validity of the proceedings in the foreclosure suit; denying that Hunt had notice, actual or constructive, of the proceedings in chancery to set aside Acre's will; alleging that said proceedings were colorable and collusive, were not defended by Frowner and wife, and ought not to have any effect on Hunt's rights; and requiring strict proof of all the allegations of the bill.

On final hearing, on pleadings and proof, the chancellor rendered a decree in favor of the complainants, and ordered a reference to the master of the matters of account; and his decree is now assigned as error.

P. HAMILTON and R. H. SMITH, for appellants:

1. A party who seeks equity, must do equity: these plaintiffs, seeking to obtain a benefit from the charge of usury, should re-pay the money actually received by their ancestor, with legal interest from the time of its receipt. The court allowed Hunt's estate a credit for the money he had paid for the note, with interest from the maturity of the note; while, if the charge of usury be established, Hunt should be allowed interest from the time the money was paid by him, and not simply from the maturity of the note.—Livingston v. Harris, 3 Paige, 534; Fanning v. Dunham, 5 Johns. Ch. 142.

2. The court erred in treating Hunt's purchase of the note, for which the mortgage was executed, as subject to the charge of usury. Hunt acquired the note and mortgage from Smith. There is no evidence of the consideration on which the note was made by Milton and passed to Acre, and it must therefore be taken as valid in its inception; and if so, it was a legitimate subject of sale to Smith, and by him to Hunt.—14 Ala.

568.   The sale to Smith, even if usurious, worked no taint in the hands of a subsequent holder, for an intermediate usurious endorsement did not invalidate the paper, or the debt which it represented.   The fraud must attach to the note, at the time of its creation, as a security for a loan.—Dowe v. Schutte, 2 Denio, 621; Cameron v. Chappell, 24 Wendell, 94; Gaither v. Bank of Georgetown, 1 Peters, 43.   Hunt claims as assignee of Smith; and though, possibly, if the suit were against Smith, Hunt could only recover what he gave for the note, yet, as against the maker and a prior endorser, he can recover the amount due on the note.—Judd v. Seaver, 8 Paige, 548.   As to the mortgage, also, Hunt is the assignee of Smith, and can recover the mortgage debt without reference to what he gave for it.—Coote on Mortgages, 303.

Hunt acquired the debt by purchase from Charles Smith; and even if the dealing between Smith and Acre was usurious, Hunt was no party to it.   The evidence shows that Smith, at the time of the purchase, was not the agent of Hunt, but had ceased acting as such agent several months before he acquired the note from Acre.   He ceased to be Hunt's agent, when Sidney Smith became his agent; and the latter testifies that, at the time of Hunt's acquisition of the note, his business was transacted partly by himself, and partly through the agency of Norris, Stodder & Co.   The proof fails to sustain the charge of the bill, that Charles Smith was acting as the agent of Hunt, and that this arrangement was a mere pretense.   Charles Smith swears, that he purchased for himself.   Magee swears, that he did not know Hunt in the transaction; that he received the money from Huntington & Smith, though he knew that it was for account of Charles Smith; and that Hunt, when the note was offered to him, declined to buy it.   Smith's ability to make the purchase is proved by Magee and others; and though he failed in business prior to 1830, when he came to Mobile, all the debts of his house were arranged within three or four years afterwards.   At the time of his negotiation with Magee for this note, Smith and Huntington were partners, and were engaged in a large business in Mobile.   Smith, then, acquired this note with his own funds, though with the knowledge that he could sell it to Hunt.   He swears that Hunt purchased it from

38

him, and did not receive it in payment of any debt due from him to Hunt. Smith obtained it at a discount of four per cent. per month; but there is no proof of what Hunt gave him for it, except that he obtained it "at a large discount." The charge of usury is made against Hunt, but is not sustained by the proof. Fraud and usury are never to be presumed. The evidence is certainly too vague to brand Hunt's connection with this matter as usurious. The decision of the chancellor, on this part of the case, ought not to be sustained.

3. The chancellor erred, in his final decree, in not allowing any effect to the deed of Frowner and wife to Hunt; thus failing to carry out the principle asserted in directing the account before the master, namely, to allow Hunt one third of the income of the land, as the holder of the widow's dower-right. It was held, in 19 Ala. 372, that the alienee of the widow cannot defend an ejectment by the heirs, and that her title is not the subject of alienation; but this decision seems to be a departure from the cases of Murphy v. Inge, and Shelton v. Carroll, (14 Ala. 289; 16 ib. 146,) as also from the spirit of the statute, which gives the widow the right of quarantine as a means of support, and to compel the heir to assign her dower. If the right of occupation is not purely personal, and she may occupy by her tenant, (14 Ala. 289,) it is not easy to see why her alienee, who can only be her tenant in fact, occupying for an aggregate instead of an annual value, could not also defend on her title. This case, however, is not at law, but in equity. There, it was a question of title; here, of equitable rights. The complainants, seeking equity, must do equity. The widow had a right to the possession of the whole until her dower was assigned; and her right was a perfect and favored right, which she was not required actively to enforce. It was the duty of the heirs, to assign her dower by metes and bounds, if possible; and if that had been done, she could assign. · Dower not being assigned, her support may have demanded a transfer of her right of possession. If she was in possession, she could not be held to account for rents and profits; nor should her assignee be held accountable. If not good to shield the mortgagee from an account to the extent of the full value of

the rents and profits, it should be good, at least, to the extent of her third part of the income. But, if the rule in 19 Ala. 372 be extended to this case, still the chancellor erred, in not giving the defendants the benefit of the consideration paid by Hunt to Mrs. Frowner; because his purchase enured to the benefit of the heirs, in extinguishing the dower-right of the widow, which was an encumbrance on the land against the heirs.—11 Price, 58.

4. The chancellor erred, also, in reference to the effect of the decree in favor of the heirs of Acre, setting aside the probate of his will. Hunt's bill to foreclose the mortgage was filed on the 9th October, 1838, in the lifetime of Acre; and the bill of revivor against his administrators and devisee was filed more than a year before the proceedings to impeach the validity of his will were commenced. Hunt was not made a party to the proceedings to set aside the will, which were conducted between the heirs and devisee of Acre; and he obtained his decree of foreclosure a year before they obtained their decree. His bill was pending when they filed theirs; yet they did not make him a party to their suit. Acre's will, by which the land now in controversy was devised to his wife in fee, was admitted to probate, by the orphans' court of Mobile, on the 14th November, 1838; so that the only parties whom Hunt could properly bring before the court by his bill of revivor, were the administrators and devisee. These parties he did bring before the court, and they were the proper parties to be before the court during all the time his bill was pending. The interest of the heirs was not established until a year after he had obtained his decree; and up to that time, *non constat* that they had any interest in the property. They had no interest under the will, which had been judicially established by the tribunal to which the entire subject was by law confided.

The state of things at the commencement of the suit determines the jurisdiction, and no subsequent change of interest in the parties affects that jurisdiction.—Conolly v. Taylor, 2 Peters, 565; Campbell & Emerson v. Emerson & Moore, 2 McLean, 30; Koppel v. Heinrichs, 1 Barb. (S. C.) R. 449; Dunn v. Clarke, 8 Peters, 1; 9 Wheaton, 539–40; 15 Howard, 198. Parties who subsequently become inter-

ested, take their interest subject to the jurisdiction previously acquired by the court. The interest of these heirs, therefore, as declared by the decree in April, 1844, setting aside the probate of Acre's will, stood affected by the jurisdiction acquired by the court under Hunt's bill in 1838. At the time their bill was filed, in 1841, they proceeded chargeable with notice of Hunt's suit. The doctrine of *lis pendens* applies to them, and not to Hunt, who proceeded with the proper parties when no litigation was pending, and when the title of the devisee, which had been judicially declared, was in no way impeached.—Hopkins v. McLaren, 4 Cowen, 667. The doctrine is not applicable to Hunt, because he acquired his interest before any suit was begun, and had himself become an actor to enforce his rights, before the death of Acre, and before the right of either heirs or devisee had sprung into existence; and that his equity ripened into a legal title subsequent to the filing of their bill, does not alter the question.—Trimble's Lessee v. Boothby, 14 Ohio, 109; Gibler v. Trimble, *ib.* 323.

Frowner and wife, the devisees, had the whole title to the land in controversy, and were the only proper parties to be brought before the court in Hunt's suit, on the principle that, if the mortgagor has assigned all his interest, the assignee only need be made a party.—Story's Equity Pleadings, §§ 197, 198; 5 Ala. 164; 2 *ib.* 331. Jurisdiction over the probate of wills being confided by statute to the orphans' court, the probate of Acre's will, until reversed, was conclusive on Hunt and all the world.—6 Porter, 219, 262; 1 Ala. 732; 2 *ib.* 235; 16 *ib.* 271, 451, 590; 18 *ib.* 417, 429; 16 Mass. 433; 9 Dana, 41; 8 N. H. 124. The judgment of probate remained in full force, until after Hunt's right had been established by a decree in chancery, and had been transformed into a perfect title, by his purchase from Frowner and wife, and by his purchase at the master's sale; and while the probate stands, all acts done by virtue of it will be sustained.—15 Serg. & R. 39; 5 Monroe, 42; 1 Bailey, 221; 2 Nott & McCord, 577; 2 La. 249; 5 *ib.* 387; 8 *ib.* 328, 422.

In view of these principles, the decree in chancery, setting aside the probate of Acre's will, was not conclusive on Hunt, and could not have the effect of rendering his decree of fore-

closure void and of no effect. The authorities cited by the counsel for the appellees do not give the decree that effect. The case of Bogardus v. Clarke, 4 Paige, rather favors the view of the appellants. While Hunt was an actor in his suit, the judgment of the orphans' court, which was a judgment *in rem*, was in full force. To allow the subsequent judgment, by which the probate was set aside, to retro-act so as to disturb rights previously acquired under judicial sanction, is forbidden by the plainest principles of public justice. The effect of the decree in favor of the heirs, at most, was to authorize them to obtain a review of Hunt's decree, and to rectify any errors that might be discovered in his account; but it could not entitle them to treat his decree as a nullity, and to treat him as a simple mortgagee in possession, and as such chargeable with rents and profits. He is a creditor with a decree in his favor against proper parties, which cannot be reversed on error; and under the sanction of that decree, he became the purchaser, and entered into possession. To treat judicial decrees, such as are shown in Hunt's favor, as worth nothing, and to charge him with rents and profits, as if he had gone into possession of the land with an open mortgage in his hands, would be a mockery of the forms of legal proceedings. The familiar doctrine of equity is, that where a party, against whom a judgment has been taken without service of process, seeks the aid of the court, he must show, not only that he was not served with process, but that he has been injured by the action of the court.—8 Ala. 767, 745, 500; 20 *ib*. 390; 1 *ib*. 351. These plaintiffs, perhaps, may be permitted to show that Hunt's decree was for too large an amount, and may be entitled to have that amount refunded to them out of his estate; but Hunt still remains a purchaser of the mortgaged premises, under a judicial decree and sale, with all the incidents attached to that character, and ought not to be held accountable for rents and profits.

5. The chancellor erred, also, in refusing to give the appellants the benefit of their evidence on the question of Acre's insanity at the time of the execution of his will. If the decree setting aside the probate is not conclusive on Hunt, it was a portion of his title to establish the sanity of the testator, and he should have been permitted to do so.

K. B. SEWALL, with whom was A. R. MANNING, *contra :*

1. Hunt obtained no title, as against the heirs of Acre, by his transactions with Frowner and wife in April, 1843, either as a purchaser from the devisee, or under his decree. He was not a *bona fide* purchaser without notice. When his deed from Mrs. Frowner was made, the suit in favor of the heirs had been pending for more than a year, and was before the chancellor for an interlocutory decree; and he was, therefore, affected by the *lis pendens.*—1 Story's Equity, §§ 405, 406, 408; Murray v. Ballou, 1 Johns. Ch. 566, 577 ; Bishop of Winchester v. Paine, 11 Vesey, 194. Besides, his agents and solicitors had actual notice, and that was notice to him.— 1 Story's Equity, § 408; Sugden on Vendors, 318; Sheldon v. Cox, 2 Eden, 224, 228; Griffith v. Griffith, 9 Paige, 315. It is not necessary that the notice should be in the same transaction.—Hargraves v. Rothwell, 1 Keen, 154–9; Winter v. Lord Anson, 3 Russ. 494. Further, the answer does not allege that Hunt was a *bona fide* purchaser, for valuable consideration, without notice. It is wholly defective on this point, either as a plea, or as an answer.—Story's Equity Pleadings, §§ 805, 806. He got no title, as against the heirs of Acre, by his purchase under his decree. He failed to make them parties to his suit, though they were necessary parties; and they are therefore unaffected by his decree, but have a right to redeem.—Story's Eq. Pleadings, §§ 196, 193.

2. Hunt was bound by the decree, in the suit brought by Acre's heirs against Frowner and wife, setting aside the probate of the will. The statute (Clay's Digest, 598, § 15,) conferred jurisdiction on the chancery court to determine the validity of the will and probate. The extent of this jurisdiction is equal to that of the ecclesiastical courts in England over personalty, and of the courts of law over realty. It is a proceeding *in rem* to ascertain in solemn form the *status* of Acre, his capacity or incapacity to make a will; and the decree is conclusive upon the whole world.—Johnson v. Glasscock, 2 Ala. 233; Johnson v. Hainesworth, 6 *ib.* 443; Hill v. Barge, 12 *ib.* 692; Bogardus v. Clarke, 4 Paige, 623; 1 Greenl. Ev. § 550; Story's Conflict of Laws, § 594.

3. The contract made by Acre, that is, the endorsement and mortgage to secure the payment of $5,026 61, on which

he received but $2,814 91, was usurious. The money was advanced on this endorsement and mortgage; and so far as Acre's representatives are concerned, it is the same thing as if he had made his promissory note for $5,026 61, and given his mortgage to secure its payment.—McElwee v. Collins, 4 Dev. & Bat. 210; Ruffin v. Armstrong, 2 Hawks, 411; Ballinger v. Edwards, 4 Ired. Eq. 449; McBrayer v. Roberts, 2 Dev. Eq. 75; May v. Campbell, 7 Humph. 450. The act of 1834 (Clay's Digest, 591, § 9), which was in force when the contract was made, denounces such a contract as "void and of no effect, for the interest only." The statutes against gaming and usury are exceptions to the rule, that a *bona fide* holder for value, without notice, is entitled to recover on a negotiable instrument.—3 Kent's Com. 84, 7th ed.; Story on Promissory Notes, § 192. The statute which prohibits usury, declares the instrument securing the payment absolutely void; and hence it must be void in the hands of whomsoever it may come.—Lowe v. Walker, 2 Doug. 739. "Usury," says Chancellor Kent, "vitiates every transaction; and even a *bona fide* holder of the tainted instrument cannot protect himself."—Thompson v. Berry, 3 Johns. Ch. 398. "The principle seems to be settled," says the supreme court of the United States, "that usurious securities are not only void as between the original parties, but the illegality of their inception affects them even in the hands of third persons who are entire strangers to the transaction. A stranger must take heed of his assurance at his peril, and cannot insist on his ignorance of the contract in support of his claim to recover upon a security which originated in usury."—Lloyd v. Scott, 4 Peters, 228. The same principle is recognized in every case where the statute denounces the instrument as void.— Post v. Dart, 8 Paige, 639; Simpson v. Fullenwider, 12 Ired. Eq. 334; Aldrick v. Reynolds, 1 Barb. Ch. 44.

If, then, Hunt was not a party to the contract between Acre and Smith, but was a subsequent *bona fide* purchaser from Smith, he stands in no better position than Smith would in a suit with Acre's heirs; for the statute makes the contract and mortgage void for the whole interest, and what is void by statute cannot be made valid by transfer. In equity, the contract was valid, in the hands of Smith, only for $2,814 91;

and for that amount only can it be valid in the hands of Hunt, the assignee of Smith.

4. But the evidence shows that Hunt was a party to the contract with Acre. Magee had first offered the note to him, and he therefore knew that it was in market for discount. Smith took it, knowing that Hunt would take it from him. This, in connection with their former and then existing relations, shows an understanding between them as to this note; and Smith passed the note and mortgage to Hunt a few days after he had obtained them from Acre. In addition to this, Hunt subsequently admitted to Milton that he took them from Acre, and that it was a transaction with Acre. Without this testimony of Milton, the veil was too transparent to conceal Hunt from view; but with it, all doubts as to the real parties are dissipated, and Hunt and Acre alone stand out the real actors in the transaction. If, however, this were not so, the case shows that the complainants have exhausted all means within their reach to prove what Hunt actually did pay; that they have examined his agents, and all persons connected with the transaction, and have called for the production of Hunt's books. No book of original entries, covering the time when said note was received by Hunt, or in which the transaction is entered, is produced. The complainants prove that Hunt took the note "at a large discount;" that is, at an usurious rate. It was in the power of Hunt, and of his guardian and agents, to have shown the facts, and thus to have fixed the precise rate of discount at which he took the note; but they have not attempted to produce any evidence on the subject. It is a case, then, where the burthen of proof has been changed; and if the defendants have failed to show that Hunt paid less, it must be presumed that he took it at the rate at which Magee got it discounted. It is not likely that Smith would attempt to speculate on Hunt, or that Hunt would suffer Smith to speculate on him, as to a note which Hunt previously knew was in the market.

5. But, whether Hunt was a party to this transaction or not, he is entitled to receive on this mortgage only what he actually paid.—Judd v. Seaver, 8 Paige, 548. The complainants have proved that he paid less, by " a large discount," than the amount specified in the mortgage; that he knew, just

before the mortgage was made, that Acre wanted money; that he received Acre's endorsement and mortgage in a few days after they were delivered to Smith; and that Acre got only 56 per cent. of the mortgage debt; and when Hunt's books are called for, that the original entry of this transaction may be seen, and what he did actually pay thereby shown, they are not produced. Here again, therefore, the *onus* is thrown upon Hunt, to show that he advanced more, if any thing, than 56 per cent. of the mortgage debt.

RICE, C. J.—The effect of a decree rendered in a suit for the foreclosure of a mortgage is not so extensive as that of a decree rendered in a proceeding *in rem*. In the former, the decree does not prejudice the rights of those who ought to be, but are not parties. In the latter, the decree binds not only the parties, but strangers to the proceeding.—1 Greenlf. on Ev. §§ 522–525; The Branch Bank at Mobile v. Hodges, 12 Ala. 118; Gliddon v. Andrews, 10 Ala. 166; Watson v. Spence, 20 Wend. 260.

Our law is materially different from the English law upon the subject of the probate of wills. Before 1836, our statutes had established a peculiar jurisdiction and system for their proof and contestation, and for the final determination of their validity or invalidity. The probate embraced all wills, whether of real or personal estate. The jurisdiction was given to the orphans' court to determine, in the first instance, the question of will or no will; and, according to its decision of that question, to allow or disallow probate. If it disallowed probate, its decree was conclusive upon all persons, until reversed or set aside in some recognized legal mode. If it allowed probate, any person interested in the will might contest its validity, by bill in chancery filed within five years from the time of such probate. Such a contest of the validity of a will, by bill in chancery, is in the nature of a proceeding *in rem*, to which any person having an interest may make himself a party, by applying in the proper mode and in the proper time; and the decree rendered in such a proceeding is certainly final and conclusive, in all courts, and upon all persons, as to the question of will or no will, until it is set aside or reversed in some direct proceeding authorized by

law. It cannot be questioned collaterally. Under our system, the question of will or no will, as applicable to the same instrument, cannot be subject, as it was in England, (Baker v. Hart, 3 Atk. 546,) to contradictory decisions prevailing at the same time.—Johnston v. Glasscock, 2 Ala. 218; Hill v. Barge, 12 ib. 687; Bogardus v. Clarke, 4 Paige, 623; Singleton v. Singleton, 8 B. Monroe, 340; Taylor v. Tibbatts, 13 ib. 177; Stevenson v. Huddleson, ib. 299; Laughton v. Atkins, 1 Pick. 535; Enloe v. Sherrill, 6 Iredell, 212.

At the death of Samuel Acre, of Mobile county, about November, 1838, he, as mortgagor, was the owner of the equity of redemption in the premises now in controversy. Jonathan Hunt was the owner of the mortgage, which contained no power of sale. On the 9th October, 1838, he filed in the chancery court of said county his bill to foreclose it, in which Acre was named as a defendant. No order or decree had been made under the bill at the death of Acre. A few days after his death, and in November, 1838, an instrument was, by the orphans' court of said county, admitted to probate, without any contest, as his will, by which his widow was made the sole devisee of the premises now in controversy. In 1839, Hunt revived his suit for foreclosure against her and her second husband, James Frowner, but did not make the heirs of Acre parties to it. Frowner and his wife filed an answer, setting up as defenses usury and satisfaction of the mortgage debt. Afterwards, and in April, 1843, Hunt paid them one thousand dollars, and obtained their deed for the premises, and their consent that a decree should be rendered in his suit according to the prayer of his bill, for the sale of the premises; and thereupon a decree was rendered for such sale, and at the sale Hunt became the purchaser, and obtained the register's conveyance of the premises, and possession of them. But before this decree was rendered, and in 1841, the heirs of Acre (except Elizabeth Caroline Acre, an infant) had filed their bill in the same chancery court, against Frowner and his wife and others, to contest the validity of said will. They did not make Hunt a party to it, but he had notice of its pendency, before he obtained his decree. In April, 1844, they obtained a decree under their bill, establishing the invalidity of the will, and the intestacy

of said Samuel Acre; which decree has never been set aside or reversed. On the 13th January, 1845, they filed their bill in the present case, to redeem the mortgaged premises, to remove the cloud upon their title, created by the decree and register's conveyance obtained by Hunt in his foreclosure suit, and for general relief. The said Elizabeth Caroline Acre was an infant, over fourteen years old, when this bill was filed, and is one of the defendants to it. After it was filed she married Joseph Tucker, and he was made a defendant.

The transaction in which the mortgage had its origin may be thus stated: Samuel Acre was the owner of a promissory note, executed by John Milton, for five thousand and twenty-six 61-100 dollars, payable two years after its date, to the order of James F. Roberts, and endorsed by said Roberts. About March, 1837, and eleven months before its maturity, Acre endorsed it to Charles Smith at a discount of four per cent. per month, and executed a mortgage on the premises now in controversy, to secure the payment of the note,—Acre receiving from Smith only fifty-six per cent. of the note.

For several years before that time, Smith had been the agent of Hunt; but he says, he " ceased acting for Hunt in January, 1837." Before Smith thus obtained the note, it had been offered for discount to Hunt, but "he declined purchasing it." Smith testifies, that he let Hunt have the note at " *a large discount*," but he does not recollect " at what rate." He does not seem to recollect " at what rate" he obtained it, for he says he took it " at *about* three to four per cent. per month discount." He further testifies as follows : " I took said note on my own account; but *knew, at the time of so doing*, I could dispose of it to Hunt. I passed said note to Hunt some few days after I received it"; and that Hunt " did not take it in payment of any debt." There is nothing in the testimony of Smith, nor in any other testimony in the case, which shows that he made any profit out of Hunt in the transaction, or that Hunt did not take the note and mortgage at precisely the same rate of discount at which Smith had taken them. Without denying credit to any positive or distinct statement of Smith, the fair inference from all the evidence in the cause, including his testimony, is, that Hunt

desired to evade the statute against usury,—that therefore he declined to purchase the note, when it was offered to him for discount, before it had been offered to Smith; and that after he had thus declined to purchase, he assured Smith that, if he would take it on *his own account*, he (Hunt) would take it off his hands. If there was not some such assurance or understanding, how could Smith "*know, at the time*" he took the note, that he could dispose of it to Hunt? In no point of view can we consider or treat Hunt as a *bona fide* holder of the mortgage, without notice of the defenses to which it was subject in Smith's hands, or as entitled to any better rights therein than Smith had, or as exempt from any defense which arises out of the transaction by which Smith obtained the mortgage.—Saltmarsh v. Tuthill, 13 Ala. R. 390; Cram v. Hendricks, 7 Wend. Rep. 573, opinion of Chancellor Walworth, 573 to 595.

Hunt died pending the present suit, and it was revived against his heirs and representatives. The appeal to this court is taken only by Hunt's administrator.

Upon these facts, we decide the following points:

1. The decree rendered in the contest of the will in chancery, is as binding upon Hunt as if he had been in fact a party to that proceeding, and concludes him, as against the heirs of Samuel Acre, from alleging or proving that said Samuel died testate.—Bogardus v. Clarke, and other authorities cited in the first and second paragraphs, *supra.*

2. The decree obtained by Hunt in his suit for foreclosure, after the heirs of Acre had, within the time allowed by statute, actually asserted their statutory right of contesting the will, and after notice thereof by Hunt, without making them parties, is void as to them; and his purchase under that decree is, as to them, also void, and not entitled to protection.—Gifford v. Hort, 1 Schoales & Lefroy, 386; Kennedy v. Daly, *ib.* 355; 2 Bla. Com. 356; Curtis v. Hitchcock, 10 Paige, 399; Lyerly v. Wheeler, 11 Iredell, 288.

The decree of Hunt, and his possession, were acquired by a fraudulent combination between him and Frowner and wife, and therefore ought not to create any right, or confer any benefit on him, as against the heirs of Acre, nor to work any prejudice to their defenses against the mortgage. Al-

Hunt, Frowner, et al. v. Acre, Johnson, et al.

though the instrument propounded as the will of Samuel Acre purported to give the mortgaged premises to his widow, and although it was, in the first instance, by the orphans' court of Mobile county, admitted to probate as his will; yet, for five years thereafter, the right by statute existed in his heirs to contest its validity by bill in chancery. The existence of this right, and its actual assertion by their bill, made them proper parties to Hunt's suit for foreclosure. His election not to make them parties, but to proceed without them to a decree, and to a purchase under that decree, was made at his own peril, and cannot be allowed to operate so as to impair their right to redeem, or their right to avail themselves in the present suit of any matter which they could have successfully relied on, as a bar to the whole or to part of the relief sought by the suit for foreclosure, if they had been made defendants to it.

3. Discounting the note on Milton, eleven months before its maturity, at four per cent. per month, and taking the endorsement of Samuel Acre, its holder, and the mortgage on his property to secure its payment, are not in law and fact *a mere purchase* of the note, but *a usurious loan;* and although Charles Smith took the note, endorsement and mortgage on "his own account", yet, as the fair inference from the evidence is that Hunt took the assignment of the mortgage from Smith with notice of the usurious nature of the transaction between Acre and Smith, and at the same usurious rate of discount at which Smith had obtained it, the mortgage is as open to the defense of usury in Hunt's hands as if it were still in Smith's hands.—Lowes v. Mazzaredo, 1 Starkie's R. 385; Massa v. Dowling, 2 Strange, 1243; Ruffin v. Armstrong, 2 Hawks, 411; McElwee v. Collins, 4 Dev. & Batt. 209; Ballinger v. Edwards, 4 Iredell's Equity Cases, 449; Gaither v. The Firemen & Mechanics' Bank, 1 Peters, 37; Johnson v. King & Jones, 4 McCord's Rep. 365; Opinion of Chancellor Walworth, in Cram v. Hendricks, 7 Wend. 573; The King v. Ridge, 4 Price's Rep. 50; Chapman v. Black, 2 Barn. & Ald. Rep. 589; Hamer v. Harrell, 2 Stew. & Por. 323; Drew v. Power, 1 Schoales & Lefroy, 195; Harrison v. Hannel, 5 Taunt. 780; Coxe v. Rowley, 12 Robinson's Rep. 273, and cases there cited by the counsel for the appellants;

Lowe v. Waller, Douglass, 708; 1 Espinasse's Rep. 11, 40; United States Bank v. Owens, 2 Peters, 535.

4. The usury could have been pleaded and proved by the heirs of Acre, as a defense *pro tanto* to Hunt's bill for foreclosure, if he had made them defendants to it; and if they had been made defendants thereto, and had pleaded and proved the usury, they would not have been charged with any interest, either legal or illegal, on the debt, prior to the rendition of the decree in that suit.—Hamer v. Harrell, 2 Stew. & Por. 323; Richardson v. Brown, 3 Bibb, 207; Cowles v. Woodruff, 8 Conn. Rep. 35.

5. The rule, that a plaintiff who comes into a court of equity for relief against a judgment at law, or other legal security, on the ground of usury, cannot be relieved except upon the terms of paying to the defendant the principal and legal interest, applies to cases where the debtor has, by *his own voluntary act, deprived himself* of the opportunity to appear in the character of defendant and plead the usury; as by giving his warrant of attorney to confess judgment, upon which judgment has been entered up; or by inserting in the mortgage the power to sell, by means of which the creditor has foreclosed his mortgage by an act *in pais*, without calling on any court to assist him. But that rule does not apply to a case like the present, where no such voluntary act has been done, either by the debtor or his heirs, and where the creditor has, under such circumstances as appear in this case, obtained a decree and register's deed for the mortgaged premises in a suit for foreclosure, so conducted as to deprive them of the opportunity of appearing as defendants and pleading the usury, and to create a cloud upon their title, the removal of which constitutes a ground of relief *independent* of the usury.—Fanning v. Dunham, 5 Johns. Chan. Rep. 122; Taylor v. Smith, 2 Hawks, 465.

The heirs of Acre filed the bill in this case for relief, not merely on the ground of usury, but to avoid the proceedings of Hunt in his suit for foreclosure. Those proceedings are not void on their face. To render them inoperative as to the heirs, it is essential to prove the proceedings and decree in their suit in chancery, by which the invalidity of the will and the intestacy of Acre were established. It is clear, therefore,

that the proceedings of Hunt in his suit for foreclosure, and the deed thereby obtained by him from the register, form such a cloud upon the title of the heirs of Acre, as to authorize them to apply to a court of equity to set them aside.— Peirsoll v. Elliott, 6 Peters, 95; Van Doran v. Mayor of New York, 9 Paige, 388; Simpson v. Lord Howden, 3 M. & C. 99.

As the case is presented on the record, it is not a mere application by a debtor to be relieved from usury. There is a distinct and clear ground for relief, *independent* of the usury, as above shown, arising out of Hunt's improper proceedings in and under his suit for foreclosure. To decide that the heirs of Acre ought to be charged with legal interest, prior to the rendition of Hunt's decree in that suit, would be to allow him to impose that charge upon them in consequence of his mere election not to make them parties to that suit, and thus to take advantage of his own wrong. We deem it clear that they ought not to be charged with any interest, prior to the rendition of his decree. Whether interest against them would be allowable from the date of that decree, or from some later period, we do not decide.

6. Without deciding whether Hunt acquired any right whatever, as against the heirs of Acre, by virtue of his decree in the suit for foreclosure and his deed from Frowner and wife, our opinion is, that he certainly did not thereby acquire, as against them, more than the right to retain the one third of the rents and profits of the premises, which was allowed to him or his representatives in the report and decree in the present case.—Wallace v. Hall, 19 Ala. 367.

Having now considered and decided what we deem the most important questions embraced by the decree of the chancellor, and having attained the conclusion that, if there is error as to them, that error is beneficial to those who have assigned errors in this court; and the assignments of error as to the other and less important questions being waived and abandoned by the appellant, we affirm the decree of the court below, at the costs of the appellant.

WALKER, J., dissents, on the question whether or not the heirs of Acre should be charged with interest from the time Acre obtained the money and executed the mortgage.