# White *et. al. v.* King *et. al.*

*Bill in Equity to establish and enforce Vendor's Lien.*

1. *Vendor's lien; priority of assignees of notes given for purchase money.* —The liens of assignees, to whom different notes taken for the purchase money of land are transferred at different times, take precedence according to the order of time in which the notes were assigned, without regard to the time when they mature.

2. *Notice to attorney; when notice to principal.*—Where the wife, by the advice and agency of the husband, (who was also her attorney in a suit against them both to subject land to the satisfaction of several purchase money notes executed by him,) enters into a consent decree of sale of the land in controversy and purchases under it, she can not be regarded as a *bona fide* purchaser without notice of the rights of a transferee, not a party to the suit, of another of the outstanding purchase money notes, the existence and holder of which were known to the husband. Notice to the husband, the agent, in such a case is notice to the wife the principal.

APPEAL from Dallas Chancery Court.
Heard before Hon. CHARLES TURNER.
The opinion states the case.

ALEXANDER WHITE, LEWIS E. PARSONS, R. M. BOYNTON, and RICE, JONES & WILEY, for appellants.

W. C. WARD, contra.

MANNING, J.—In 1853 John White purchased of one Mynatt the lands in Talladega county which are the subject of this suit ; the deed of which, executed by Mynatt and wife in 1854, conveyed them to John White, his heirs and assigns. And he moved with his family to, and lived upon and cultivated, the plantation included therein. In 1856, he sold and conveyed one-half interest in the premises, for $4,000, to his brother Alexander White, taking in part payment a promissory note of the latter for $1,900.00, most of which amount was subsequently paid. The brothers then cultivated the plantation in partnership.

In 1858, John White sold and conveyed the other half· of the premises to Alexander White, who took exclusive possession of them, having given in payment for said half, and for a half interest in some corn and stock thereon, his three promissory notes, each for the sum of $1,666.66, with interest from January 1st 1859, payable to the order of John White, in September .1860, 1861 and 1862, respectively.

The one of these payable in September 1861, was assigned March 1st 1867, by John White to one Portis, and by him back to John White, as guardian of appellees, for money belonging or due to them. Their mother (who is their next friend in this cause,) having afterwards been appointed guardian of appellees, in place of John White, the note came into her hands as guardian. And by her it was presented for payment of interest, to Alexander White on the 1st of February 1868 ; at which time he executed his note for $1,211.08, payable to Mrs. King, as guardian, one day after date, for the interest which had accrued on the note presented, and caused a credit therefor, of the same date, to be entered on the note. And in August 1870, this suit by bill in chancery, was brought by appellees, (the Kings,) against Alexander White and his wife, Narcissa S. White, and by amendment, against John White and his wife, Mary J. White, to establish and enforce a vendor's lien on the lands, for the payment of that part of the price of them, which was embraced in said notes and due as aforesaid, from Alexander White to the complainants. In the defence, the lands are claimed as the property by purchase of Mrs. Narcissa White, upon facts hereinafter set forth. And the chancellor having determined that the complainants were entitled to the benefit

[White *v.* King.]

of the vendor's lein, and decreed the enforcement of it ad-
versely to Mrs. Narcissa White and her husband, the cause
is brought into this court by appeal.

On the 25th of November, 1867, John White assigned by
a separate instrument in writing, to his wife, Mary J. White,
both the $1,900 note, on which a balance was still due, and
the other two notes for $1,666.66, each ; on one of which
latter notes, a large payment had been made. In this instru-
ment of assignment, it is recited that the lands in question
were paid for by moneys of the statutory separate estate of
Mary J. White, and that, "whereas the said notes are in fact
the property of my said wife, and I am otherwise indebted
to her for more than the amount of the same, for money be-
longing to her separate estate used by me,—now therefore, in
consideration of the premises, I hereby transfer, and assign,
the said notes to my said wife, Mary J. White."

In December 1868, Mary J. White and her husband filed
a bill in equity in the chancery court of Dallas county,
against Alexander White, setting up this assignment of said
notes to Mary J., and praying that unless Alexander White
should pay them within a time to be prescribed, the lands
be sold to enforce and execute the vendor's lien thereon for
the payment of these notes.    The bill averred also that the
lands had been paid for by John White, with money's be-
longing to the separate estate of his wife, and therefore, be-
longed in equity to her, and that defendant, Alexander White,
well knew this. Mrs. White did not however, claim to have
the lands themselves, but only that they should be sold to
pay the notes aforesaid assigned to her, and given for a por-
tion of the purchase money.    No mention was made in that
suit, of the notes transferred to the appellees in this cause.
The defendant Alexander White was required to answer un-
der oath.

In his sworn answer to the bill, Alexander White denied
that the lands were purchased and paid for with moneys of
the separate estate of Mary J. White, and averred that he
had never before heard of such a claim.    He says further,
that the first sale of one-half of the lands made to him, was
made to raise money to enable John White to pay Mynatt
for the lands, and that the sum of $2,000, or $2,100, then
paid by him upon said purchase, to John White, was appro-
priated to the payment of Mynatt for them.    He also denied
that the notes were the property of the complainant, said
Mary J., as her separate estate under the Code, or that they
had been transferred to her in consideration that they were a
"part of the separate estate of complainant, for they were

[White v. King.]

not the separate estate of complainant, and never claimed by her to be so, nor was any claim ever asserted by her, or intimated, to the said land as her separate estate, to this respondent, until the filing of said bill."

Testimony having been taken on the part of complainants in support of the allegations in their bill, an arrangement, proposed by Alexander White, was made by him and his wife, Narcissa S. White, with John White and his wife, in October 1869, whereby, in consideration of $550, acknowledged and receipted for as paid by Mrs. Narcissa S. White to Mrs. Mary J. White, in part purchase of the notes sued on, it was agreed that a decree should be rendered in favor of complainants, for the amount of the notes, including said $550, then due thereon, and for a sale of the lands to pay this amount; and that if before the sale to be made by the register, Mrs. Narcissa White should pay Mrs. Mary J. White, the further sum of $1,950, making together $2,500, and become purchaser of the land at such sale, complainant, Mary J., would accept in satisfaction of her claim, two notes from said Narcissa and her husband, Alexander White, payable the first of January 1871, and 1872, respectively, for the balance, after deducting the $2,500 of the amount of the decree, and their mortgage of the lands to secure payment of said notes to Mrs. Mary J. White, but, that if after paying said $2,-500, said Narcissa should not become the purchaser of the lands at the register's sale, then the amount obtained for them, after deducting the balance of the amount of the decree due to Mary J. White, should all be paid to Mrs. Narcissa White.

In accordance with this written agreement, the decree was rendered by consent, at the October term 1869, of the court; the $1,950 were paid; the lands were sold by the register, December 20th 1869, and bid off for Mrs. Narcissa S. White; a deed thereof was made by the register to her; and she and her husband made their joint notes for the balance referred to, of the amount of the decree; to Mrs. Mary J. White, and executed to her a mortgage of the same lands to secure payment of the notes. And at the next term of the court, the sale made by the register was reported and confirmed.

The lands are situated in Talladega county, and were advertised in Dallas county to be sold at Selma, on the 15th of December, 1869—and by a postponement by consent of parties, were sold at Selma, on the 20th of that month, at a distance of more than one hundred miles from the land, and with no one present with the register, except John White, perhaps, and one Dixon, upon whose bid, the only one made,

the lands, which were not all in one body, though sold together, were knocked off to Mrs. Narcissa White, at a sum about sufficient to pay the amount of the decree in favor of Mrs. Mary J. White, and costs.

This consummation was effected in December 1869.

The judicial sanction thus given to this adjustment and settlement, by consent, establishes the validity thereof between the parties to that suit, and divests the complainant, Mrs. Mary J. White, of all title she had previously had, if any, in said lands. But it could not prejudicially affect the appellees in this cause, who were not parties thereto; though they ought to have been made so, as their interest in the matter, was well known to both Jno. White and Alexander White, and probably to Mrs. Mary J. White also. *Griggsby* v. *Hair*, 25 Ala. 327; *Branch Bank* v. *Hodges*, 12 Ala. 118.

This settlement and decree, however, could not in any case, hurt the appellees, but rather the contrary. The decree is made in pursuance of a formal agreement, which nowhere affirms or admits, nor does the decree itself, that Mary J. White had any interest in the notes independently of that which the simple assignment of them to her would unquestionably convey; and being made in her suit, it operates as a ratification of the sale of the lands which John White made to Alexander White, and for which those notes were given, and decides that the lands were subject to a vendor's lien for the payment of the notes to Mrs. Mary J. White, and should be sold to pay them. Impliedly, therefore, the same lien existed in favor of the other note, of the batch of notes which Alexander White, gave for the purchase money of the same lands, which other note was transferred, as before explained, to the appellees in this cause, and in regard to which, Mrs. Mary J. White not only made no claim, but her husband testifies, "neither she nor I claim, or intend to insert any interest in the same." And what she and her husband declined to do, in this respect, Mrs. Narcissa White and her husband cannot do for her.

This decree is in harmony, with previous decisions of this court, in which, the vendor's equitable lien on land for the payment of purchase money, is recognized, in favor of assignees, of the notes given therefor. *White* v. *Storer*, 10 Ala. 441; *Roper* v. *Day*, 48 *id*. 510. And this, against a subsequent purchaser of the land, who has notice that his vendor had not paid for it. *Foster* v. *Athenœum*, 3 Ala. 302; *Burns* v. *Taylor*, 23 *id*. 255.

It is also held, that "where several notes taken for the purchase money of land, are assigned at different times, the

assignment of each note is, *pro tanto*, an assignment of the vendor's lien, unless expressly waived, and the liens of the several assignees are to be preferred according to the priority of their assignments, without reference to the maturity of the notes. *Griggsby* v. *Hair*, 25 Ala. 327.

But it is insisted that Mrs. Narcissa White, purchased the lands in controversy at the register's sale, and is a *bona fide* purchaser for valuable consideration without notice. Mrs. Narcissa White, is the wife of Alexander White, who purchased the land of his brother John White, and executed to him the note therefor, on which this suit is founded. Alexander White knew that this note belonged to the appellees, and was unpaid; and in the proceeding year, 1868, he had executed to their guardian, his note for $1,211.08, for the interest that had accrued thereon. The lands for which, in part this note was given, embraced the home of his brother's family whose wife protested against and opposed the sale of it, and refused to join her husband in the deed to Alexander White, by which she and her children were to be expelled therefrom; which circumstances, and the failure of Alexander White to pay for the property, created between the parties acrimonious feelings. It would be strange, if, in the anxieties and complaints produced by this state of things, Mrs. Narcissa White was not informed that her husband had not paid the notes which he had given for the home that was so reluctantly yielded to her. She is, probably, the only person in the world, who if she did not know that the note now sued on, was not paid, could truthfully and positively testify that she did not—and this she has not done.

In her answer to the bill, it is true, it is averred that she did not have such notice. But, the answer is not made under oath; it was not required to be, and it is not even signed by her, but by her solicitors, White and Boynton. Nor can the omission of her testimony be ascribed to accident, or to ignorance of its importance in such a case. For her husband and co-defendant, Alexander White, is shown to be a lawyer of more than thirty years practice, and eminent for ability, and he is himself a witness also in this cause.

But, whether Mrs. Narcissa White had notice, or not, personally, is in this case immaterial. Her husband unquestionably had all the notice in this matter, that any person could have. And he admits, and John White proves, that it was by his (Alexander's,) advice and ageny, that his wife, Mrs. Narcissa White, became the purchaser of the lands, or that they were bid off for her, at the register's sale. The knowledge of the agent in such a case, is the knowledge of the princi-

[White *v.* King.]

pal. *LeNeve* v. *LeNeve*, Ambler 436; 2 Wh. and Tud. Cases in Eq. 1st pt marg. p. 21 et seq.

In regard to the question, whose money paid for the lands, so far as they have been paid for, upon the purchase of them from the register, it is not necessary to dwell. Some of the observations made on the last foregoing topic, the notice to Mrs. Narcissa White, might be made upon this. We have no testimony from herself on this subject. It does not appear that she had any separate estate, to an amount that would, or did enable her to make such a purchase as that of these lands. And the circumstances and facts developed in the cause, taken with the evidence relating to the partial payments, prevent such a case from being made as should debar complainants from the benefit of the vendor's lien on the lands, for the payment of the notes on which their suit is founded ; of which notes, the principal one was transferred to their guardian for them, before any of the other notes had been assigned.

There is no error in the decree of the chancellor, prejudicial to appellants, and it is therefore affirmed.

NOTE BY REPORTER.—At a subsequent day of the term, appellants counsel applied for a re-hearing. The application in support of it did not come into the reporters hands. The following response was made to it.

MANNING, J.—The counsel for appellant are mistaken in supposing, in their application for a re-hearing, that this court misconceived the most material points in the cause on which a reversal was sought and expected. We take a different view of their effect.

If it be admitted that the money of Mrs. Mary S. White was paid by her husband, John White, for the lands in controversy that were conveyed to him, and that she, therefore, had such an equitable right therein, as to be entitled to have them conveyed to her ; it does not follow that she must accept them and that they did become hers. If she chose instead of having title made to herself to take the notes or a portion of the notes for the price, for which her husband sold and conveyed the lands to Alexander White—or any other things of value—and to permit the title conveyed by her husband to remain in her husband's vendee, and to hold the latter as a debtor to her for the notes assigned to her, (perhaps with other securities,) by her husband, and to hold the lands subject only to a vendor's lien for the payment of the notes, especially if the arrangements to this effect are vali-

[Ditmar v. Bogle.]

dated by a decree in a suit brought by her—these proceedings may amount to a relinquishment of her claim to the land itself and to an acceptance, perhaps in preference, of the notes transferred to her by her husband, instead of the lands. She was not bound to take the lands; she might reasonably prefer to make her husband, or his vendee keep them, and account to her otherwise for her moneys paid for them.

The facts and evidence in the cause have satisfied us that the decree of the chancellor ought not to be reversed. And the re-hearing is, therefore, denied.