Judge Ewing
delivered the Opinion of the Court.
We entirely concur with the Chancellor in the opinion, that the deed of trust executed by Adams to Tilley, conveying the lots in contest, was secretly made and contrived, at the instance of Ingham, to hindei’, delay and obstruct creditors in the collection of their debts, and especially to hinder, delay and obstruct the complainant in the collection of his decree, and that the same is fraudulent and void.
But we cannot concur with him in so much of his decree as disallows interest to the complainant, on the decree rendered in his favor against Ingham, on the first day of June, 1833, from the rendition thereof. Nor can we concur with him in so much of the decree as directs the distribution of the proceeds of the sale of the lots ratably among the creditors.
The deci’ee of 1833 was rendered against Ingham, for the funds of McDonald, acknowledged to be in his hands. He has abused his trust as a depository, in failing to pay them over, as directed by the decree, and has no doubt applied and appropriated them to his own use. He is, therefore, clearly responsible for interest.
Though there is no foundation for believing that the creditors pretended to be secured by the deed of trust, participated in the fraud, yet it is clear, by their admissions in their answers, that, at or before the execution of the deed, they were not consulted on the subject, nor had any intimation of its execution, though the grantor lived in the city where they all resided; nor were they advised of its execution for some time thereafter. Indeed, from the silence in their answers, as to the time *496 when they received notice of the existence of the deed, we are warranted in presuming that the first information they had of it, was either communicated by the proceedings in this suit against them, or was prompted by this proceeding. It is clear that they did not assent to its terms at or before it was made; and we conclude that they never did assent to them until after this suit was commenced.
A creditor who goes into chy.to impeach the con veyances of his debtor as fraudulent, must show that an effort to collect his debt by ex’on,has pro ved ineffectual. That a party assented to a deed of trust when it was made, may be inferred from the mere fact that it was beneficial to him; but that presumption may be rebutted by an admission in his answer, or by other proof, that the assent was never given, or first given at a time subsequent to the making of the deed; and, from the time when the assent was given, he may take the ben efit of the deed, though his equity may be overreached by proceedings commenced between its date and the assent.
Their equity could not have attached until they did assent to them, or in some form agree to accept the provisions of the trust. If so, as the complainant’s equity attached by the commencement of his proceedings against the specific property, so fraudulently conveyed away, his equity is prior in time, and must be preferred.
As the deed was secretly and fraudulently made, and recorded in a distant State, from the place of residence of the defending creditors, and as it had been kept secret for years, while, in the mean time, Ingham was controlling the rents and profits, and directing their application, the probability is, that it never would have been discovered, or been made availing to the creditors pretended to be provided for, had not the complainant, by his superior vigilance, made discovery of the stratagem. If, after he has made the discovery, and commenced proceedings to uncover the fraud, and subject the property so covered and held under a fraudulent deed, they can step forward and snatch from him the proceeds of his exertions, then will a new device have been discovered by which a fraudulent debtor may cover over and hide his property from all creditors, and live upon and enjoy the profits; but if, perchance, one more vigilant than the rest, may trace out the fraud and commence proceedings to subject the property, he may have so contrived it, by the very device , which he has resorted to, as to give a preference to creditors less vigilant, by engraft-ing in the fraudulent deed, which he makes, a trust in their favor. We cannot sanction such doctrine. Their equity, if it be admitted that equity may be engrafted upon, or spring out of, a fraudulent deed, could not commence until they assented to, or agreed to accept, the *497 trust in their favor; and if it was not assented to, or agreed to be accepted, until after an equity attached in favor of a more vigilant creditor, by the commencement of his suit, such assent or agreement to accept, cannot be permitted to overreach the just claims and prior equity of the more vigilant creditor.
Deeds of trust have been declared fraudulent and void by this Court, not only as to the grantor and grantee, but also as to the cestui que trust, upon grounds not entirely dissimilar to those presented in this case, in the case of Pitts' Trustees vs. Viley, 4 Bibb, 446, and McKinley &c. vs. Combs &c. 1 Mon. 105.
We do not intend to be understood as asserting, that an assent might not be presumed in favor of a cestui que trust, from the bare fact of its being beneficial to him; but only that such assent and acceptance of the terms of the deed of trust will not be presumed against the admissions or silence of the defendant’s answers as to the time of acceptance.
Nor can we place the defending creditors upon an equality with the complainant, upon the principle that they are creditors, and their claims equally meritorious with his:—
First. Because his equity first attached to the fund in contest, by his prior commencement of his suit, and he should not be compelled to yield up or divide the profits of his superior vigilance among other general creditors.
Second. They have not, by judgment and execution, placed themselves, on their cross bill, in a situation to impeach the deed as fraudulent, and some of them have not even obtained a judgment. Their remedy at law has not been tried, much less exhausted.
But as they, in their answers and cross bills, did manifest their assent to the trust, and have sought to enforce its provisions, from the time of filing the same, their equity then attached, and is good against all other general creditors from that time; and they should be permitted to come in ratably for the residue of the proceeds of the sale of the lots, after the complainant’s decree, interest and costs have been first satisfied.
*498 It is, therefore, the opinion of the Court, that the decree of the Chancellor be reversed and cause remanded, that a decree may be rendered in conformity to this opinion.