## POWELL v. WILLIAMS.

1. A mortgagee cannot, by a sale under execution at law, upon a judgment obtained on the mortgage debt, extinguish the equity of redemption of the mortgagor, who may file his bill to redeem, though the possession has been recovered by action at law.

2. In stating the account, the mortgagee should be charged with rent, only from the time he actually obtained the possession, and should not be charged with interest upon the rents from the end of the year in which they accrued. The rent should be first applied at the end of each year to extinguish the interest for that year, and the residue, if any, applied to the payment of the principal.

3. The mortgagee having objected to the redemption, and ejected the mortgagor from the possession, must not only account for rent, but for the damages recovered in the action at law, in the circuit and supreme courts, and should also account for what the mortgagor would have realized from the crop growing on the premises at the time of the ouster, deducting the probable cost of cultivation.

Error to the Court of Chancery sitting at Cahawba. Before the Hon. D. G. Ligon, Chancellor.

THE question presented by the bill, answer and proof, is, whether a mortgagor, after a judgment obtained at law by the mortgagee, for the debt secured by a mortgage on land, and sale of the mortgaged premises by execution issued on the judgment, can file a bill to redeem. The chancellor, at the hearing, granted the relief sought by the bill, and directed an account to be taken, &c. This is now assigned as error.

G. R. ENANS, for plaintiff in error.

1. The mortgagor's equity of redemption, is the subject of seizure and sale under execution against him. 4 Kent's Com. 161; Waters v. Stewart, 1 Caine's Cases, 47; Hobart v. Frisbie, 5 Conn. 592; Ingersoll v. Sawyer, 2 Pickering, 276; Ford v. Philpot, 5 H. & Gill, 312; Carpenter v. Sutton, 7 Pick. 49; Jackson v. Hull, 10 Johns. 481; McGregor and Darling v. Hall, 3 S. & Porter, 397; Magee v. Carpenter, 4 Ala. 469.

2. Such levy and sale has the effect to divest all the mortgagor's title and interest, and to invest the purchaser with all his rights, of whatever extent or description. Schnell v. Schroeder, 1 Bailey's Eq. Rep. 334; Crow v. Tinsley, 6 Dana, 402; Hartshorn v. Hartshorn, 1 Green's Ch. R. 348; Ormsby v. Phillips, 4 Dana, 232.

3. The mortgagee may acquire the equity of redemption either by purchase of the mortgagor, or by purchase at sale under execution. Hicks v. Hicks, 5 Gill & Johns. 75; 2 Johns. Ch. 125; Coote on Mort. 27; Shelton v. Hampton, 6 Iredell, 216; King v. Cantrell, 4 Ib. 251; Goodman's adm'r v. Pledger's adm'r, at this term. And when he has thus acquired the equity of redemption, the union of the two estates vests in him a perfect and absolute title, discharged of the equity of redemption. James v. Mory, 2 Cowen, 246; Jackson v. De Witt, 6 Ib. 316; Penderson v. Brown, 1 Brown Rep. 93; Cullum v. Emanuel & Gaines, 1 Ala. 23; Heirs and adm'r of Hitchcock v. U. S. Bank of Pa. 7 Ala. 386; Greenough v. Rolfe, 1 Caine's Ca. 1.

There is no rule of equity, nor any principle of public policy, which would exclude a mortgagee from becoming the purchaser of the mortgaged property, when sold under execution. Porter v. King, 1 Greenl. R. 297; Lansing v. Goellett, 9 Cow. 346-57-69; Brown et al v. Frost, 10 Paige, 243; Hicks v. Hicks, 5 G. & John. 34.

The mortgagee may purchase the mortgaged property at sheriff's sale, under execution founded on the mortgage debt. Porter v. King, 1 Greenl. Rep. 297; Cullum v. Emanuel & Gaines, *supra;* Stover v. Herrington et al. 7 Ala. 142.

By electing to proceed upon his judgment, did not the mortgagee deprive himself of the right afterwards to claim the benefit of the mortgage, even if the sale was insufficient to satisfy the mortgage debt? And would not a purchaser at that sale, have taken the land discharged of the mortgage? 1 Bailey's Eq. 334; Cox v. Wheeler, 7 Paige, 248; Cullum v. Emanuel & Gaines, *supra.*

The bill should have been dismissed for the want of equity—there was adequate remedy at law to relieve against any fraud, irregularity, unfairness, or oppression in the sale, and the allegations as to these matters, shew no sufficient reason for the interposition of a court of equity.

As a bill for redemption, the allegations are insufficient. Beekman v. Frost, 18 John. 144; Ogle v. Shipp, 1 A. K. Marsh. 287; Willard v. Fisk, 2 Pick. 540; 2 Barbour Ch. Pr· forms 628.

A decree should not be rendered without making the subpurchaser under Powell a party. In cases where a change of the ownership of the legal estate takes place, pending the suit, by alienation or otherwise, the new owner must be brought before the court in some shape or other, in order that he may execute a conveyance of the legal estate. Daniel's Ch. Pr. 328; Story's Eq. Pl. § 351; 11 Vesey, 199; 2 Barbour Ch. Pr. 197.

The decree is erroneous in charging Powell with rents and profits from the time he purchased, when the record discloses that he did not get the possession until long subsequent to the purchase.

In ordering interest to be computed on the annual rents. Breckenridge v. Brooks, 2 Marsh. 337; Hogan and wife v. Stone & Co. 1 Ala. 496.

ELMORE, contra.

1. An execution on a judgment at law for a mortgage debt, cannot be levied on the equity of redemption of the mortgaged property, and a sale of the equity under such an execution passes nothing to the purchaser. Going's Ex'r v. Skrier, 7 Dana, 66.

2. A mortgagee, by obtaining a judgment at law for his debt, and purchasing the mortgaged property under his exe-

cution, does not deprive the mortgagor of his right of redemption. Dabney v. Green, 4 Hen. & Mun. 101.

3. A court of equity allows a redemption of property on the general principle of relieving against forfeitures. Scott v. Britton, 2 Yerg. 215; and see the case of Ld. Cranstown v. Johnson, 3 Ves. jr. 170. Where a mortgage or judgment is given as security for a debt, the debtor has a right to redeem on payment of the debt, on the ground, that the original contract, or agreement was, that the estate should be held as security for the debt, and this cannot be changed. Vide also, Southgate v. Taylor, 5 Munf. 420.

4. A mortgagee, before foreclosure, can do no act to bind the mortgagor when he offers to redeem. Wilson v. Troup, 7 John. Ch. 25; and see Tice v. Annin, 2 Johns. Ch. 125, where, a mortgagee, on selling the equity of redemption, discharges mortgagor of balance of debt.

5. As the mortgagee in this case could only sell all the right defendant had at law, this of course was no more than the equity of redemption; then he holds the legal estate by forfeiture; and against forfeitures, it is the peculiar province in chancery to relieve. Vide Scott v. Britton, 2 Yeg. 215.

6. The usual time allowed to redeem is six months from the liquidation of the debt by the master's report. Perine v. Dunn, 4 Johns. Ch. 140.

7. In taking and stating an account of the amount due on the mortgage, where the mortgagee is in possession, he will be charged with the rents and profits of the mortgaged property from the time he took possession, and also with the amount of the purchase money he received on the sale of the premises, together with interest to the time of stating the accounts. Van Buren v. Olmstead, 5 Paige, 9; Whittick v. Kane, 1 Paige, 202.

8. Rents are applied as they accrue to keep down interest. Saunders v. West, 5 Pick. 260. And annual rests are directed in account for rents, while mortgagee is in possession, as well as in an account for rents and profits. Wilson v. Metcalfe, 1 Russ. 530.

9. On a bill to redeem an equity of redemption sold on execution, mortgagee must account for rents and profits received by him, notwithstanding plaintiff may have tendered to

him the amount of the purchase money and interest without regard to rents and profits. Tucker v. Buffum, 16 Pick. 46.

10. Where the bill contains an offer to redeem and mortgagee refuses to take the money on the ground that mortgagor has no right to redeem, this held sufficient offer to redeem. Edgerton v. McCrea, 5 How. Miss. 183. And it is not necessary in a bill to redeem to offer to pay debt. Quinnu v. Brittain, 1 Hoff. 353.

11. An equitable title only to lands is not the subject of levy and sale by execution. Clay's Dig.; Davis v. McKinney, 5 Ala. 719. Here the legal title was in Powell, and the right to redeem and to compel Powell to re-convey was all defendant had.

COLLIER, C. J.—The most important question arising in this cause, is directly presented to this court for the first time. Can the mortgagee of real estate, cause the mortgaged premises to be levied on and sold under a *fieri facias* to satisfy the debt intended to be secured? To this inquiry we now address ourselves. It has been repeatedly held, that the interest of a mortgagor in possession, at least before forfeiture, and perhaps afterwards may be sold under an execution at law against his estate, at the suit of a third person; and that the purchaser would acquire a right to the possession as against the mortgagor, as well as the equity of redemption. See McGregor & Darling v. Hall, 3 Stew. & P. 397; Perkins and Elliott v. Mayfield, 5 Por. Rep. 182; Cullum v. Emanuel & Gaines et al. 1 Ala. Rep. 23; Doe ex dem. Duval's Heirs v. McLoskey, Id. 708; P. & M. Bank, v. Willis & Co. 5 Ala. Rep. 770; Stover v. Herrington et al. 7 Ala. Rep. 142; The Br. Bank at Mobile v. Hunt et al. 8 Ala. R. 876; Duval's Heirs v. The P. & M. Bank et al. 10 Ala. R. 636. It is needless to inquire whether our decisions upon this point can be supported upon common law principles, and in the absence of legislation; they date back to too early a day, and have been too long acquiesced in, merely from deference to precedent furnished by our predecessors, to be now departed from. But the case at bar, we have seen, presents a different question.

It is provided by statute, in North Carolina, that "the

equity of redemption, and the legal right of redemption, in all lands, tenements, or other hereditaments, which now are, or hereafter shall be pledged or mortgaged, shall in like manner be liable to any execution, or executions hereafter sued out, or any judgment or judgments now had, or which hereafter shall be had against the mortgagor or mortgagors." The preceding section to which the words "in like manner" refer, enacts, that executions may be levied upon goods and chattels, lands, &c., held in trust for the defendants therein; and the purchaser of such property shall hold the same discharged and freed from the trust. 1 Rev. Stat. N. C. ed. 1837.

In Camp v. Coxe, 1 Dev. & Bat. Law Rep. 52, the only question was, whether a sale of the equity of redemption under an execution at law, at the instance of the mortgagee for his mortgage debt was sanctioned by the act referred to. The court conceded that the general words of the statute embraced all equities of redemption, and as it contained no restrictive terms, they felt somewhat reluctant to imply them; but said, " upon full consideration, however, it seems to us, that a limitation arises out of the act itself, and from the nature of the subject, as plainly as if it were expressed in so many words, excluding a sale by the mortgagee for the debt secured by the mortgage." " In the case of a mortgage, the land is not sold, but only the equity, as an equity. After the sale, the legal title is supposed to remain as it was before, and the equity to subsist independently, as distinct from the freehold. The nature of the interest sold is not changed by the sale, speaking of it as a legal or equitable interest, as contradistinguished from each other. The only change in that respect, is simply to make an equity, as such, subject to legal process for the benefit of the owner's creditors. But the rights of the mortgagor, mortgagee, and purchaser, as against each other, in respect of the former or present ownership of the equity of redemption, are purely equitable, and consequently their relief must be equitable. For these reasons, the statute is most properly to receive its interpretation from the court of equity; which upon its own principles, must determine in what cases there is an equitable interest

susceptible of sale, and what effect will be allowed there to a sale by execution between parties standing as these do. Upon the known and clearest principles of equity, such a sale is forbidden; and whether that court must understand the legislature as abrogating those principles by using general terms, when a particular purpose, comparatively consistent with those principles, was obviously and alone to be effected."

The mortgagee, it was said, was not within the mischief intended to be remedied by the statute, that the object of the act was not to foreclose mortgages, and make them more effectual as securities to the mortgagee, but to subject the equitable interest of the mortgagor to the satisfaction of the demands of the creditors, who could not before get a security on the premises. "Authorizing a sale of an equity of redemption, implies that the thing pledged is worth more than the debt, and the act of making such a pledge, and thereby withdrawing the thing from execution, is regarded in some degree as a species of fraud on the general creditors, whose executions are thereby hindered. For such creditors the provision must, at least in the main have been meant. Unless for cases of that sort, can it be supposed the act would have been passed at all? The mortgagee is not an object of that policy. He has of his own provision, a distinct, specific, and adequate security. It is to be remembered that he does not sell the land, but the right in equity to redeem. Why should he be allowed to extinguish, instead of proceeding on his security? How can he sell it, if less than the debt be bid? For in that case, if the money is to be applied to the execution, the mortgagor gets nothing for the equity; and there can be no sale without a price."

The effect of the sale, it was said, was to *assign* not to extinguish the equity of redemption. It was conceded, as indeed it must be, that a mortgagee may purchase at a sale by another creditor, although the effect is to unite the legal and equitable estates, and thereby mere the latter. Whether he might sell under an execution upon any other debt than that secured by the mortgage, was considered somewhat doubtful, as such a right afforded too great a temptation to oppression and fraud, with a view to individual profit. It was supposed

that as courts of equity relieve against agreements between persons in a fiduciary relation, so that they ought to prevent the mortgagee from purchasing the equity of redemption at execution sale, and thereby destroying the relation between himself and the mortgagor, created by the nature of the security.

This precise question was raised and adjudicated by the supreme court of Massachusetts, in Atkins et al. v. Sawyer, 1 Pick. Rep. 351, and while it was admitted that the mortgagee, if he holds a demand against the mortgagor, independent of the mortgage, has the same right that other creditors have to secure it by the levy and sale of the equity of redemption, it was explicitly denied that he may cause a sale to be made under execution, for the purpose of satisfying the debt secured by the mortgage. It is unnecessary to reiterate the reasoning of the court ; for after the notice we have taken of the North Carolina case, it may readily be conjectured.

These decisions, we think, apply with all force in this State, where we have no statute authorizing the sale of an equity of redemption under an execution. If a statute, which in unlimited terms makes the equity of redemption subject to levy and sale, is restricted by judicial construction, so as not to allow the mortgagee thus to proceed to obtain the object which the mortgage was intended to secure, surely in the absence of all legislation, greater facilities cannot be extended to the mortgagee to enable him to collect his debt. By taking a mortgage, without a power of sale, he has elected, or rather assented to the means provided by law to make his security effectual. That is, in order to avail himself of the mortgage, he has impliedly stipulated that he will resort to equity to foreclose it, and must be held to his contract.

It is an unquestionable proposition, that a foreclosure and sale of the mortgaged premises is not the only remedy of the mortgagee. He may, if he thinks proper, assert his right to the possession of the mortgaged premises, and hold them until, by the rents and profits the debt is paid off ; or he may sue at law, and enforce a collection by a sale of other property of the mortgagor than that embraced by the mortgage.

We will not stop to reiterate or amplify the arguments we have stated from Camp v. Coxe, *supra*, nor will we consider

any other ground urged for annulling the defendant's purchase. It is abundantly shown from what has been already said, that it cannot be upheld, and that the chancellor very properly decided in favor of the complainant's right to redeem. The objection that the application should have been made to the court of law to set aside the sale, cannot be maintained—the object of the bill is to redeem, and chancery is alone competent to administer such relief.

The purchaser from the defendant *pendente lite* acquired no title as against the complainant, either legal or equitable. *Lis pendens* is notice to all persons, at least within the jurisdiction of the State, of the matters litigated, and will prevent a third person from acquiring an interest by purchase, which can affect the plaintiff's rights. *Besides*, if a complainant was obliged to bring before the court every person who derives title through the defendant by purchase subsequent to the institution of the suit, he might by repeated real or simulated sales, be prevented from bringing his cause to a hearing for an indefinite period.

Is is however objected, that the decree is erroneous in charging the defendant with the rent of the land from the time of his purchase, and in directing interest to be added upon the amount thus annually accruing. The defendant did not obtain the possession until a considerable time after the sale under execution, and not until the close of a protracted lawsuit; and upon no principle of law can he be charged with rent until he was let into the occupancy of the premises, nor is it allowable to calculate interest upon the rents from the end of the year in which they accrued. The rents should be first applied at the end of each year to extinguish the interest for that year; and if a balance of rent remains it should be applied *pro tanto* to the payment of the principal. See Hogan and wife v. Stone & Co. 1 Ala. 496; Davenport v. Bartlett & Waring, 9 Ala. 179.

If the complainant had offered to pay the money secured by the mortgage *eo instanti*, the refusal of the defendant to accept, would absolve him from that time from the payment of interest, unless it appeared that he had not kept the money ready to pay whenever required. Bass and Carter v. Gilliland's heirs, 5 Ala. 761. See Kirkmans et al. v. Vanlier, 7

Ala. 217; Lewis v. Bradford, 8 Ib. 632. The complainant however did not offer to pay the defendant the amount of his judgment immediately, but "as soon as he could raise the money." This proposition was rejected, and in the absence of all proof, it would be too much to infer, that the complainant *raised* and has ever since retained the money to redeem the land from the mortgage. Hence upon principles of established law, the defendant must be charged with interest upon the judgment.

As the defendant objected to the redemption of the land by the complainant, in despite of the equitable rights of the latter, and ejected him from the possession, he should account not only for the rents since the execution of the writs of *habere facias possessionem*, but for the damages which he recovered in the actions at law, with ten per cent. damages awarded by this court, and the costs in the circuit court. He should also account for what the complainant would have realized from the crop, growing on the premises at the time of the ouster, subject to a deduction for the probable cost of its cultivation, gathering, and preparation for market, transportation to the usual place of sale, charges for selling, &c., if the place of sale was elsewhere than at home. No other mode of adjustment will do justice to the complainant, and place him in the situation he would have occupied if his offer to redeem had been yielded to.

In respect to the costs of the supreme court, the complainant is not entitled to have these refunded, as the judgment conclusively indicates, that this court could not on error afford relief against the judgments at law. This being the case, the complainant should not have sued writs of error, but should have sought redress in chancery.

It may be well to remark, that the damages which the defendant collected in the action to try title, should first be applied in payment of interest on the debt secured by the mortgage, and if there was a balance in favor of the complainant above the interest at the time he paid it, it should *pro tanto* be applied to extinguish the principal.

The damages sustained by the complainant by the loss of his growing crop, if not required to keep down the interest,

or above what was necessary for that purpose, should be appropriated *pro tanto* to pay the principal.

In respect to the costs of this court, we think they should be paid by the plaintiff in error. Inasmuch as the main questions, the invalidity of the levy and sale, and the consequent right to redeem were correctly determined against him, there was no necessity in the present condition of the cause in the court below, for coming here to correct the principles upon which the account should be taken. It would be competent for the court of chancery to modify or annul the order of reference, either before or after the report was made, so as to reduce or increase according to law, the amount to be paid as a pre-requisite to the redemption of the mortgaged premises; so that thus far the matter of the decree may be considered *in fieri*. The complainant should not therefore be charged with the costs of an error which perhaps the court might have corrected—at least until it had received its definitive sanction.

It results from what has been said, that the decree of the court of chancery will be here corrected, (at the cost of the plaintiff in error,) in respect to the principles upon which the account shall be taken by the register; and instead of following the directions contained in the decree of the chancellor, the register will conform to the principles declared by this opinion. As a guide to further proceedings in the court below, a copy of this opinion will be certified and transmitted.