# SALTMARSH *vs.* SMITH.

[CREDITOR'S BILL TO REMOVE CLOUD OVER TITLE TO REAL ESTATE.]

1. *Revocation of agency by death.*—The death of the principal is a revocation of an agent's authority to execute a deed, unless the power was coupled with an interest in the land to be conveyed ; and a deed, executed by the agent after his principal's death, but ante-dated, is utterly void.

2. *Jurisdiction of equity to remove cloud over title to real estate.*—A creditor of an estate which has been reported insolvent, having obtained a judgment against the administrator, may come into equity, to remove a cloud over the title to real estate, and to have such real estate then subjected to the payment of his debt.

3. *Assignment by widow of right of dower.*—A transfer by a widow of her right of dower, before dower has been allotted to her, otherwise than by release to the terre-tenant by way of extinguishment, is wholly inoperative as a conveyance.

4. *Costs.*—The chancellor's decree having been reversed on error, at the instance of the defendant, so far as it directed a deduction from his debt against an insolvent estate for the value of the widow's dower interest which he claimed, and affirmed on all his other assignments of error, the costs of the appellate court were imposed on him, because it appeared that he was not entitled to claim any interest in the widow's dower.

APPEAL from the Chancery Court of Dallas.

Heard before the Hon. JAMES B. CLARK.

THIS bill was filed by John N. Smith, against Alanson Saltmarsh, and the heirs-at-law and administrator *de bonis non* of William Rutherford, deceased.　Its material allegations were these : That in September, 1841, the complainant and said William Rutherford became surcties for one William Bower, on a note for a large amount due and payable to said Saltmarsh ; that suit was brought on this note, and in the fall of 1845, which was after the death of Rutherford, judgment was rendered against said Bower and complainant, for the whole amount due on this note ; that Bower was insolvent, and complainant was consequently compelled to pay, and did pay, the whole amount due on this judgment ; that said William Rutherford died in Dallas county, the place of his residence, intestate, some time between the 13th March and

the 1st July, 1844; that letters of administration on his estate were duly granted by the probate court of said county, on the —— day of ——, to ——; that said administrator in chief administered all the personal assets of the estate, and all the real estate except two city lots in Mobile, which are hereinafter referred to, and afterwards resigned or was removed; that letters of administration *de bonis non* were afterwards granted by said court to one L. D. Bradley, who received no assets belonging to the estate, and reported it insolvent; that on the 20th July, 1852, complainant had a notice issued to said Bradley, as administrator of Rutherford, notifying him that a motion for a summary judgment would be made against him, as such administrator, at the then next ensuing term of the circuit court of Lowndes, for one half of the amount of the judgment paid by complainant, as above stated, as surety for Bower; that under this notice a judgment was rendered in favor of complainant, against said administrator, at the spring term of said court, 1853, which, in consequence of the insolvency of said estate, was ordered to be certified to the probate court of Dallas in accordance with the requisitions of the statute; and that no payment was ever made on this judgment, or on the debt on which it was obtained, either by the administrator in chief or the administrator *de bonis non* of said estate. The bill further alleged, that said Rutherford in his life-time owned two city lots in Mobile, and had appointed said William Bower his agent to sell and convey them; that these lots were not sold by Bower during Rutherford's life-time, but soon after his death, to-wit, about the 3d July, 1844, said A. Saltmarsh took possession of them, claiming to have purchased them from said Bower, as the agent of Rutherford; that Bower's deed to Saltmarsh was in fact executed after Rutherford's death, and after his death was known to both of them, and was ante-dated as of the 13th March, 1844.

The prayer of the bill was, "that an account be taken to ascertain the amount due to complainant on his said demand, and to ascertain whether there are any personal assets for the payment of said demand; that said deed

made by William Bower to said Saltmarsh be declared inoperative and void; that said lots be sold for the payment of complainant's debts, with costs, and all right and title thereto be divested out of said heirs-at-law;" and the general prayer, for other and further relief, was added.

Saltmarsh answered the bill, alleging that Bower's deed to him was in fact executed before the death of Rutherford; that, even if it was executed after Rutherford's death, it was nevertheless valid and operative, because Bower's power of attorney was irrevocable, having been given to secure him on account of the purchase-money for said lots, which he had been compelled to pay for Rutherford; that respondent, on the 29th April, 1845, procured Mrs. Rutherford's relinquishment of dower in said lots, a copy of which relinquishment is made an exhibit to the answer; that he was a creditor of Rutherford's for a large amount, and should be allowed to hold these lots in part satisfaction of his debt, even if his deed should be declared void; and he prayed that his answer might be taken as a cross bill, and that appropriate relief might be granted to him in reference to these matters.

The relinquishment referred to, which was endorsed on the deed executed by Bower, is in these words:

"State of Alabama, } Know all men by these presents, Dallas county. } that I, Ellen Rutherford, wife of William Rutherford, deceased, late of Dallas county, for a valuable consideration paid to my said husband, do hereby transfer and relinquish all my right of dower to the within described lots or parcels of lands, to said A. Saltmarsh. In testimony whereof, I have hereunto set my hand and seal, this the twenty-ninth day of April, 1845.            Ellen Rutherford, [seal.]"

"Signed, sealed and delivered } before me, day and date above. } Jno. M. Strong, J. P." }

The deposition of William Bower was taken by the defendant Saltmarsh, but was suppressed by the chancel-

lor on the ground of incompetency from interest. Several other questions on the admissibility and competency of testimony were raised before the chancellor, and decided by him; but, as they are not passed upon by the court, it is unnecessary to take further notice of them.

On final hearing, on pleadings and proof, the chancellor rendered a decree for the complainant; declaring the deed from Bower to Saltmarsh to be void, and ordering it to be canceled; also, ordering an account of the complainant's debt, and a sale of the lots to satisfy it ratably with the claims of such other creditors as might come in and contribute to the expenses of the suit. He also decreed, that Saltmarsh might come in with the other creditors, on his contributing to the expenses; and ordered the master, if any part of Saltmarsh's claim was allowed, and "he does not abandon the assignment of the widow's claim to dower in said lots," to ascertain the reasonable value of said dower interest at the time of the transfer or relinquishment, and to deduct the same from his claim as of that date.

From this decree Saltmarsh appeals, and now assigns the same as error, together with the rulings of the chancellor on the testimony.

JAMES H. CAMPBELL, for the appellant.

D. W. BAINE, contra.

RICE, C. J.—Without looking to the deposition of Bower, it is established that the deed which he, as attorney of Rutherford, executed to Saltmarsh, for the real estate here in controversy, was in fact executed *after the death of Rutherford*, although it was made to bear date before his death. The validity of the deed depends upon the question, whether the power given by Rutherford to Bower, under which Bower assumed to execute the deed, survived Rutherford. The general rule is, that a power ceases with the life of the person giving it. The exception is, where the power is coupled with an interest—that is, with an interest *in the thing itself*, and not an interest only in that which is *produced by the exercise of the power*

*itself.* The power given by Rutherford to Bower was not coupled with an interest in the thing—the real estate ; it was not engrafted on an estate in the land; and, therefore, it expired on the death of Rutherford. As the deed has nothing to support it except that power, and as the power had ceased before the deed was executed, the deed is utterly void.—Hunt v. Rousmanier, 8 Wheat. 203 ; Clayton v. Fawcett, 2 Leigh, 19 ; Haughtaling v. Marvin, 7 Barb. Sup. Ct. R. 412 ; Scruggs v. Driver, 31 Ala. 274 ; Huston v. Cautril, 11 Leigh, 136.

[2.] The deed was ante-dated. It purported to have been executed before the death of Rutherford, although in fact it was executed afterwards. Its invalidity did not appear on its face. It formed a cloud upon the title, which a court of chancery might remove, at the instance of a creditor of the estate of Rutherford, interested in having the real estate sold to advantage, and impediments to such sale removed. The equity of the bill is too clear to admit of discussion.—Dargan v. Waring, 11 Ala. Rep. 988; Rugeley v. Robinson, 19 Ala. Rep. 404 ; Gordon v. Lowell, 21 Maine, 251 ; Henderson v. Burton, 3 Iredell's Eq. Rep. 259 ; McDermott v. Strong, 4 Johns. Ch. R. 687 ; Hadden v. Spader, 20 Johns. 554; Ashley v. Pocock, 3 Atk. 208 ; Watts v. Gayle, 20 Ala. Rep. 817 ; Moffat v. Ingham, 7 Dana, 495 ; Hunt v. Acre, 28 Ala. Rep. 580.

[3.] The nature and validity of the writing obtained by Saltmarsh, in 1845, from the widow of Rutherford, and endorsed on the deed, must be passed on. In passing on it, it must be noticed that it is not a relinquishment of dower by a *feme covert* under our law, (Clay's Digest, 174, § 10,) but a mere transfer to Saltmarsh of the *widow's* mere " *right* of dower,"—*her dower never having been assigned to her.* We consider it clear, upon authority, that *before the widow's dower has been assigned to her,* she has no estate in the land ; and her mere " title of dower is, for most purposes, nothing more than a right of action, and, consequently, transferrable in no other mode than by release to *the terre-tenant by way of extinguishment.*"—Park on Dower, 334, (11 Law Library ;) Ridgway and Wife v.

McAlpine, at the present term, and authorities there cited ; Green v. Putnam, 1 Barbour's Sup. Ct. Rep. 500 ; Wallace v. Hall, 19 Ala. R. 367 ; Hunt v. Acre, *supra.*

Saltmarsh had no title to the real estate, either legal or equitable, either under the deed or otherwise.   The writing endorsed on the deed, and signed by the widow, could not operate in his favor " *by way of extinguishment ;* " but could operate, if allowed to operate at all, only as a conveyance of the widow's mere *right* of dower.   If it were allowed to operate as a conveyance, it would invest him with the right to maintain an action for it in some court. It cannot be allowed so to operate, but must be treated as wholly inoperative ; and Saltmarsh must be viewed and treated as one who took and retained possession of the real estate without right or title.

We understand the chancellor to have directed the register, among other things, that if in obeying and executing the order of reference, he allowed any part of Saltmarsh's claim of indebtedness against the estate of Rutherford, he should charge Saltmarsh with rent to the extent shown in the order, by deducting such rent from Saltmarsh's claim ; *and that he should also deduct from Saltmarsh's claim the reasonable value of the widow's dower interest, unless Saltmarsh abandoned the aforesaid transfer or conveyance of her claim to dower.*   We have shown above, that Saltmarsh got nothing by that transfer or conveyance—that it was void; we must hold, therefore, that the chancellor erred in directing the deduction on account of the dower interest.   In all other respects, the decree of the chancellor is fully as favorable to Saltmarsh as it should have been.

From the view we take of the case, the same conclusion, as against him, would be attained, if we were to sustain his assignments of error as to the testimony of Bower, and as to the exceptions to the interrogatories to George Haige, and to the testimony of F. L. Owen. And as it is unnecessary to a correct decision of the present appeal, taken by Saltmarsh, we decide nothing as to these assignments of error, further than to say, that however the law may be as to them, the other matters appear-

27

ing in the record show that he has no right to complain of any part of the decree of the chancellor, except that part which directed the deduction on account of the dower interest. In that particular, the decree is reversed; in all other respects, it is affirmed.

As the main question in the case, and all others except the one above pointed out, were correctly determined against Saltmarsh, and as in chancery cases we have a discretion as to costs, we think it proper, upon the case as presented by the record, to tax him with the costs of this court, although in the single particular above pointed out there was an error committed against him. That error could not possibly have affected him, if he had abandoned the transfer or conveyance of the widow's claim to dower. That transfer gave him no right, and the abandonment of it would not have cost or lost him any thing. When he comes here to obtain the correction of such an error, and all the main questions are decided against him, we will correct the error, but at his costs. Our predecessors went greatly beyond this in Powell v. Williams, 14 Ala. 476; and we are not sure that we could follow that case in all things.

This decision must be understood as confined to the points made by the assignments of error of Saltmarsh, the appellant. Let the cause be remanded for further proceedings.

STONE, J., not sitting.