# Johnston & Seats *v.* Smith's Adm'r.

*Bill in Equity to enforce Vendor's Lien on Land.*

1. *Extent of relief under bill to enforce vendor's lien; removal of cloud on title to land.*—When the jurisdiction of a court of equity has attached, under a bill properly filed to enforce a vendor's lien on land, the court will make its jurisdiction effectual for the purposes of complete relief, by removing any impediment to the enforcement of the lien, especially where such impediment is a cloud on the title.

2. *Multifariousness.*—A bill to enforce a vendor's lien on land against a sub-purchaser with notice, who has bought in the land at a sale for unpaid taxes assessed against it as the property of the original purchaser, receiving a certificate of purchase, and also to redeem, or to set aside the tax-sale and certificate as a cloud on the title, is not multifarious.

3. *Purchase at tax-sale, by party who ought to have paid taxes.*—A pur-chase of land at a sale for unpaid taxes, by a person whose duty it was to pay the taxes, operates only as a payment, and can not avail to strengthen his title against the person under whom he holds; and this principle applies to a person who is in possession under an executory contract of purchase, and to a sub-purchaser holding under him.

4. *Champerty and maintenance; what contracts are tainted with.*—The doctrines of champerty and maintenance were designed to prevent any officious intermeddling by strangers, with lawsuits in which they have no pecuniary interest; and where a person has such an interest, though he is not a party to the suit, there is no principle of law or public policy which forbids his furnishing funds to aid in the litigation, or participating in the fruits of the recovery.

5. *Illegal contract; when recovery will not be defeated by.*—When the party complaining can establish his cause of action, without proving or

[Johnston & Seats v. Smith's Administrator.]

relying on an illegal agreement in any way connected with it, he can not be defeated by a plea setting up the illegality of the agreement.

6. *Release or assignment of dower; set-off.*—An inchoate or contingent right of dower may be released by the wife, or may be conveyed by her jointly with her husband, but can not be assigned or conveyed to a stranger; nor is it available as a set-off (Code, § 2991), since its value can not be precisely measured by a pecuniary standard.

7. *Sale under decree; putting purchaser in possession; writ of assistance.* When lands are ordered to be sold under a decree, the decree may direct the register, upon payment of his bid by the purchaser, to execute to him a conveyance, and to place him in possession; and when the decree so orders, the register may, without waiting for a confirmation of the sale, issue a writ of assistance to the purchaser, if the premises are withheld by a defendant, or one who enters *pendente lite* under him, or by a mere trespasser, since all such persons are concluded by the decree.

8. *Growing crops, as between sub-purchaser in possession and vendor enforcing lien, or purchaser at sale under decree.*—A purchaser, or sub-purchaser, in possession when lands are sold under a decree enforcing a vendor's lien, is not entitled, as against the purchaser at the sale under the decree, to the crops planted and growing on the lands at the time of the sale; and when he asserts his claim by petition against the purchaser at the sale, this court will not, on appeal from the original decree, review the order dismissing the petition, the purchaser not being a party to the record in this court.

APPEAL from the Chancery Court of Madison.

Heard before the Hon. H. C. SPEAKE.

The original bill in this case was filed on the 10th November, 1871, by Morris K. Taylor, as the administrator *de bonis non* of the estate of Hughey Smith, deceased, against the partners composing the firm of Johnston & Seats, Isaac S. Ellett, and *John* McGaha (or *John P.* McGaha, as he is indifferently called in the record); and sought to enforce a vendor's lien on a tract of land, for the balance of purchase-money due and unpaid. The land contained about 438 acres, and was sold by said Ellett to McGaha about the 6th June, 1860. Of the purchase-money, nearly one-half ($1,728) was paid in cash, and $97 agreed to be paid on the 1st January, 1861; and the other half, $1,825, was agreed to be paid on the 1st January, 1862. The $97 was paid as stipulated, and Ellett was placed in possession of the land on or about the 1st January, 1861. At the time of the sale, McGaha executed and delivered to Ellett a bond, by which,·after reciting the terms of the contract, he covenanted to deliver the possession of the land on the 1st January, 1861, if the $97 was then paid as agreed, and " to make and deliver to said Ellett a good and lawful deed to said lands, if the said Ellett pays to the said John P. McGaha the remainder of said purchase-money." For the unpaid half of the purchase-money falling due on the 1st January, 1862, the bill alleged that " the said Ellett executed his bond, *jointly with the said McGaha*, on the 6th day of June, 1860, for the payment *to the said McGaha*, on the 1st day of January, 1862, of said last installment of said purchase-

money, with interest thereon." This description of the note or bond was admitted in the answer to be true and correct, except that it was made payable to John P. (and not John) McGaha; but the instrument itself was not produced, nor is any copy of it set out in the record. This note or bond was transferred and assigned, before maturity, to Bradley, Wilson & Co., a mercantile partnership doing business in Huntsville; and not being paid at maturity, they instituted suit on it against Ellett and McGaha, in the Circuit Court of Madison, and recovered a judgment against them, on the 13th March, 1866, for $1,835 debt, and $614.41 interest, with costs. In June, 1867, Bradley, Wilson & Co. being indebted to the estate of Hughey Smith, deceased, the administrator of said estate obtained an order of the Probate Court, authorizing him to compromise said indebtedness; and in compromise and settlement thereof, he accepted from them an assignment of said judgment, which was entered on the execution docket, as shown by an exhibit to the bill, in these words: "For value received, we hereby transfer this judgment, No. 7,281, to Stanhope C. Smith, administrator for the estate Hughey Smith." McGaha was adjudicated a bankrupt, on his own petition, on the 29th October, 1869; and this judgment was duly filed as a claim against his estate, and was proved for the full amount, with interest, and as constituting a prior lien on the land. Smith being afterwards removed from the administration, letters of administration *de bonis non* were duly granted to the complainant in this suit; and he then filed this bill, as above stated, alleging that Ellett was insolvent, and an execution against him had been returned "No property found;" and "that said judgment is the property of the estate of said Hughey Smith, is evidence of the balance of said purchase-money unpaid, and is a lien upon said lands."

Ellett continued in the undisturbed possession of the land, and on the 13th April, 1871, being indebted to Johnston & Seats, he executed to them a mortgage on said lands, and transferred to them McGaha's bond for title, by indorsement thereon in these words: "For value received, I transfer to Johnston & Seats all the right, title and interest I have in or to the above and foregoing title-bond (subject, however, to any balance of purchase-money that may be due on same), to secure the sum of $2,377.74, with interest from the 1st January last, the amount I owe them and have given my note for." On the 9th February, 1872, the indebtedness secured by said mortgage and assignment being past due and unpaid, Ellett released and conveyed to said Johnston & Seats all his interest in the lands and bond, in consideration of the release and discharge of his indebtedness to them; the conveyance using these operative words: "I do hereby release, surrender and acquit, to said

Johnston & Seats, all my right and equity of redemption in and to the said property, real and personal, in said mortgage described, and hereby declare the assignment of the said bond for title absolute and unconditional." At the same time, Johnston & Seats were placed by Ellett in the possession of the land, and they were in possession when the bill was filed. In their answer to the original bill, they admitted the material facts above stated; admitted "that said judgment is the property of the estate of said Hughey Smith, and, for whatever balance may be due thereon, there is a lien on said land;" but insisted that certain partial payments, the dates and amounts of which were specified, were made on the debt before the rendition of the judgment, that the administrator took the assignment of the judgment with the knowledge and understanding that these payments were to be credited and deducted, and that other partial payments had been realized by the administrator from the proceeds of notes transferred as collateral security; and insisted, also, that the judgment was a prior lien on the entire fund belonging to the bankrupt estate of McGaha, in the hands of his assignee, alleged to be over $1,800.

On the 1st May, 1871, before the filing of the original bill, the lands were sold, with others, by the tax-collector of Madison county, for the unpaid taxes assessed against them for the year 1870, as the property of said Isaac S. Ellett; and were bought at the sale, for $107.03, by said Johnston & Seats, who received a certificate of purchase from the assessor. On the 29th April, 1873, the complainant made an effort to redeem the lands, and deposited $349.10, for that purpose, with the judge of probate; taking his receipt, which recited that said administrator claimed a vendor's lien on the land. On the 3d December, 1873, the complainant filed an amended bill, by leave of the court, in which he stated these facts; alleging that he had no knowledge of the tax-sale when the original bill was filed, and praying, "in addition to the relief prayed in said original bill, that said land may be sold for the payment of said taxes so paid by him in the redemption thereof; that the decree directing and authorizing the sale declare that it be sold free and unincumbered of any tax-title or certificate of said Johnston & Seats; and that out of the proceeds of said sale complainant be decreed to receive the balance of the purchase-money due as aforesaid, and also the re-payment of said taxes."

Johnston & Seats refused to receive the redemption money, and, on the expiration of two years from their purchase at the tax-sale, demanded a conveyance from the probate judge; and on his refusal to comply with their demand, they filed a petition for a *mandamus* from the Circuit Court to compel him. On the 2d July, 1874, the complainant filed a second amended

bill, by leave of the court, in which he stated these facts, and prayed, 1st, for an injunction restraining the further prosecution of the petition for a *mandamus ;* 2d, for a personal decree against Johnston & Seats, for the amount due on the judgment, after deducting the credits to which it might be found subject, and for $349.10 paid as redemption money; 3d, "that his said vendor's lien be set up and established for the balance ascertained to be due on said judgment, and said land be sold for the satisfaction of the same, under the order of the court, free of all incumbrance, including said vendor's lien and said pretended purchase at tax-sale by said Johnston & Seats;" 4th, "to this end, that said certificate of purchase at tax-sale be cancelled, and declared to be void, and said tax-sale set aside and declared a nullity;" and for other and further relief. In their answer to the second amended bill, Johnston & Seats admitted the facts as above stated, but denied that the complainant had any right to redeem the land, and insisted on the validity of their purchase at the tax-sale; and they demurred to the bills, original and amended, for want of equity, and for multifariousness.

Among the claims proved and allowed against the bankrupt estate of McGaha, was a judgment in favor of Robert W. Coltart, who also purchased one or more of the other claims; and objections to the allowance of the complainant's judgment or claim, as a prior lien on the fund in court, being made by the assignee, a contract or compromise was entered into between complainant and Coltart, which was reduced to writing and signed on the 18th November, 1872, as follows: "Whereas, the undersigned, Morris K. Taylor, as the administrator of Hughey Smith, deceased, has filed a claim against the estate in bankruptcy of John McGaha, founded on a judgment obtained against him as the surety of one Ellett; and whereas, the undersigned, R. W. Coltart, has also filed a claim against said bankrupt; and in view of the fact that said Taylor, as administrator as aforesaid, has pending in the Chancery Court at Huntsville a suit against said Ellett and others, to enforce the vendor's lien for the satisfaction of a judgment which he has against said Ellett and others : Now, said Coltart having placed an indemnity of $1,000 in the hands of said Taylor, to protect the estate of said Hughey Smith in the event that said Taylor should not obtain, by said suit in said Chancery Court, satisfaction of the amount found to be due the estate of said Smith on said judgment, said Taylor having withdrawn his claim from said proceedings in bankruptcy; if said $1,000 should not be sufficient to indemnify said Taylor as aforesaid, the said R. W. Coltart, by these presents, binds himself to pay the *deficit,* whatever it may be ; and if said Taylor should collect so much

of his claim in said Chancery Court as to make $1,000 more than will indemnify him, he hereby agrees to pay the amount over and above the satisfaction of his claim to said Coltart. Witness our hands," &c.

In pursuance of this agreement, Coltart paid the $1,000 to Taylor, the latter withdrew his claim against the bankrupt estate, and the fund in court was distributed and paid among the other claimants. The second amended bill alleged these facts, and a copy of the written agreement was made an exhibit to it. In their answer to the bills original and amended, Johnston & Seats admitted the execution of this contract or agreement, but denied that it could affect their right to have the judgment claim credited with the entire fund in the court of bankruptcy, against which it was, as they insisted, a prior and paramount lien. They insisted, also, that by the terms of this written contract, and its execution as alleged, the complainant's claim was satisfied, and the further prosecution of the suit was solely for the benefit of Coltart; and they demurred to the bills, "because, upon the allegations thereof, the complainant has no lien on said lands, and no remedy against these respondents."

The cause was submitted on the demurrer, and at the same time for final decree on the pleadings and proof; and it was· agreed, "that the exhibits to the original and amended bills, and the exhibits to the answers to said bills, shall be taken as evidence, without the necessity of proof as to their genuineness."' Afterwards, while the cause was held under advisement by the chancellor, the redemption money paid by the complainant to· the probate judge was, by written agreement of the parties filed of record in the cause, "deposited with the register of the court,, to be disposed of by·the chancellor's decree on the final hearing, without waiver of the rights of either of the parties." The chancellor overruled the demurrers to the bill, and held the complainant entitled to relief as prayed; and he rendered a decree, annulling and setting aside the tax-sale, enjoining the further prosecution of the petition for a *mandamus*, and directing the register to pay over to the complainant the money deposited in court; also, ascertaining that the amount due on the complainant's judgment, after deducting the credits claimed by the respondents, was, by arithmetical calculation, $3,042.37; declaring a lien on the lands for the payment of this sum, with interest; ordering the lands to be sold by the register, after due advertisement as prescribed, "and upon payment of his bid by the purchaser at said sale, the register will execute to him a deed for said lands, and place him in possession thereof;" and that he make report of his proceedings at the next term.

In their answer to the second amended bill, Johnston &

8

Seats alleged that McGaha was a married man at the time he contracted to sell the land to Ellett, and his wife had an inchoate right of dower in the lands; that on or about the 20th November, 1871, after they had acquired an interest in the lands under their mortgage from Ellett, in consideration of $500 paid to Mrs. McGaha by them, she sold and relinquished to them her right of dower in the lands; and they insisted that, "in any aspect of the case, they are entitled to be compensated and reimbursed the sum so paid to her, with interest." In reference to this claim, the chancellor held and decreed, that, "if allowable at all, it can only be enforced by original or cross-bill, and not by answer;" and he therefore disallowed it in his decree.

At the sale by the register under the decree, on the 4th September, 1876, Robert W. Coltart became the purchaser of the lands, at the price of $3,300.58; and having paid the amount of his bid, the register executed to him a conveyance of the lands, and issued a writ of assistance on the 18th September, 1876, directed to the sheriff, and commanding him to put said Coltart in possession. On the same day, September 18th, Johnston & Seats filed a petition addressed to the chancellor, alleging that they had a growing and ungathered crop on the land, which they had planted in good faith, and which they were entitled to gather and retain; insisting that the purchaser at the register's sale had no right to the growing crops, and no right or title to the land until the confirmation of the sale; and asking that the decree might be modified, so as to protect their right to the crops. On the next day, in vacation, the chancellor dismissed the petition, because the parties adversely interested had not been notified, and because the petitioners had not, during the progress of the cause, made any claim or suggestion of a growing crop. At the ensuing term of the court, the register's report of the sale was confirmed, without objection.

The appeal is taken by Johnston & Seats, "from the decree in said cause;" and they here make twenty assignments of error. The material matters relied on as error are shown by the briefs of counsel.

L. P. WALKER, and BRANDON & JONES, for appellants.—1. The contract between complainant and Coltart is tainted with champerty and maintenance. By its terms, which have been executed between the parties, the complainant's judgment has been sold and transferred to Coltart, for whose benefit the suit is now prosecuted; and Smith's estate neither has any interest in the recovery, nor can it lose anything by an adverse decision. Such a contract is against public policy, and the courts will not lend their aid to enforce it.—*Holloway v. Lowe*, 7 Porter, 488;

[Johnston & Seats v. Smith's Administrator.]

*Elliott v. McClellan*, 17 Ala. 206; *Dumas v. Smith*, 17 Ala. 305; *Wheeler v. Pounds*, 24 Ala. 472.

2. The amended bill is inconsistent with the original bill. The original bill sought to enforce a vendor's lien, while the amended bill seeks to redeem from a tax-sale. The complainant claims the legal title to the land, or a lien on it for the unpaid purchase-money, and that the legal title, with the lien, gives him the right to redeem. What is the result? When he redeems from the tax-sale, having already the legal title, he is invested with all the original title of his intestate—that is, he has the entire legal and equitable title, and is the absolute owner. He can no longer say that he is a mere trustee of the legal title, and that he holds it in trust for the purchaser. The legal and equitable estates being united in him, the trust is extinguished.—2 Washb. Real Prop. 203; *Nicholson v. Halsey*, 1 John. Ch. 417. The amended bill being inconsistent with the original bill, it can not be allowed.—*Larkins v. Biddle*, 21 Ala. 257; *Crabb v. Thomas*, 25 Ala. 212; *Winter v. Quarles*, 43 Ala. 692.

3. But the complainant had no right to redeem from the tax-sale. By the words of the statute, property sold for taxes "may be redeemed by the owner, his heirs, or legal representatives." The complainant was not the owner, nor was he the heir or legal representative of the owner: he had no estate in the land, and merely claimed an equitable lien.—*Dubose v. Hepburn*, 10 Peters, 1; *McBride v. Huey*, 2 Watts, 439; *Cox v. Eastwell*, 21 Penn. St. (9 Harr.) 480; *Orr v. Cunningham*, 4 Watts & Serg. 298. As purchasers at the tax-sale, Johnston & Seats were not bound to accept the money tendered in redemption by the complainants.—Co. Litt. 334; 1 Bacon's Abr., tit. *Conditions*, 662.

4. As purchasers from Ellett, Johnston & Seats had a right to perfect their title, by buying in the dower interest of Mrs. McGaha, which was an incumbrance on the title; and if the estate was redeemed from them, they were entitled to a credit for the reasonable value of the incumbrance so bought in and extinguished.—*Davenport v. Bartlett & Waring*, 9 Ala. 179; *Bell v. Thompson*, 34 Ala. 633. Though the demand was not available as a set-off at law (*Martin v. Wharton*, 38 Ala. 638), the rule in equity is different, where the party seeking equity is required to do equity.

5. The purchaser at the sale by the register had no title, and no right to the possession, until the sale was confirmed by the court.—2 Dan. Chan. Pl. & Pr. 1274–5; Rorer on Judicial Sales, 55, § 122; 2 B. Monroe, 407. When the sale was confirmed, the purchaser would be entitled to the possession of the land, and would be invested with the title of the parties to the

suit; but this would give him no right to the crops growing and ungathered. A court of equity may apportion the rents, and protect the interests of parties who have planted in good faith.—1 Story's Equity, §§ 470–87, 510. That the practice here pursued was proper, see *Kershaw v. Thompson*, 4 John. Ch. 609; *Trammell v. Simmons*, 8 Ala. 271; *Creighton v. Paine*, 2 Ala. 158.

HUMES & GORDON, *contra.*—1. As against the complainant, who succeeded to the rights of McGaha, the original vendor, Johnston & Seats were bound to pay the taxes which might accrue against the lands; and a purchase at tax-sale by them could only amount to the payment of a debt they were bound to discharge.—Blackwell on Tax-Titles, mar. p 399; Cooley on Taxation, 346; *Avery v. Judd*, 21 Wisc. 262; *Smith v. Lewis*, 20 Wisc. 350; *Jones v. Davis*, 24 Wisc. 229; *McMinn v. Whelan*, 27 Cal. 300; *Moss v. Shear*, 25 Cal. 38; *Lacey v. Davis*, 4 Mich. 152; 24 Mich. 300.

2. That the complainant had a right to redeem from the purchaser at the tax-sale, see Blackwell on Tax-Titles, 424; Cooley on Taxation, 366; *Bowers v. Williams*, 34 Miss. 324.

3. As to the respondents' purchase of Mrs. McGaha's inchoate right of dower, no relief could be obtained without a cross-bill, or answer in the nature of a cross-bill.—*Cullum v. Erwin*, 4 Ala. 452; *Gallagher v. Witherington*, 29 Ala. 420; *Ketchum v. Creagh*, 53 Ala. 224. Nor was the demand available as a set-off.—*Martin v. Wharton*, 38 Ala. 638.

4. That the purchaser at the register's sale might be placed in possession before the sale was confirmed, and might have a writ of possession or assistance against a party to the suit, see *Creighton v. Paine*, 2 Ala. 158; *Trammell v. Simmons*, 8 Ala. 271; Code, § 3208.

5. That the contract between the complainant and Coltart is obnoxious to the charge of champerty or maintenance, was not assigned as cause of demurrer, nor set up by plea. If the question is presented, it is submitted that Coltart, having an interest in the subject-matter of the suit, might lawfully aid in its prosecution, and be reimbursed out of the profits.—2 Story's Equity, § 1048 *a ; Thompson v. Marshall*, 36 Ala. 504; *Findon v. Parker*, 11 Mees. & W. 675; *Hartley v. Russell*, 2 Sim. & Stu. 344; *Baker v. Whiting*, 3 Sumner, 475. The complainant had a lien on two different funds, while Coltart had a lien on but one of them; and in such case, a court of equity would compel the complainant to resort to the separate fund. 11 Paige, 581; 38 Penn. 516; 18 B. Monroe, 114; 4 Edw. Ch. 232; 1 Story's Equity, § 633. The parties might lawfully contract to do what a court of equity would compel them to do.

[Johnston & Seats v. Smith's Administrator.]

6.   Coltart, the purchaser at the register's sale, is not a party to this appeal, and his rights can not be considered.—2 Ala. 160; 8 Ala. 271; *Sullivan v. Robinson*, 39 Ala. 613.

SOMERVILLE, J.—This is a bill filed by the appellee to enforce a vendor's lien on certain lands described. It was amended so as to seek a redemption of a portion of the lands under a tax-sale made on May 1st, 1871, at which the appellants, Johnston & Seats, became the purchasers.

It is manifest that the judgment claim held by the appellee, Taylor, against Ellett and McGaha, having been rendered on a note given for the *purchase-money* of these lands, was a lien on them at the time, and continues to be, unless it has been lost, or overridden by some superior equity accruing in behalf of the appellants, Johnston & Seats, who claim the lands as purchasers from Ellett, the original vendee, and also as purchasers at tax-sale.

Equity will, upon principles too well settled for discussion, assume jurisdiction to enforce a vendor's lien; and such jurisdiction having rightfully attached, it will be retained so as to make it effectual for the purposes of complete relief.—1 Story's Eq. Jur. § 64 (*k*). It is a familiar maxim, that courts of equity never undertake to "do justice by halves," and its powers are, therefore, always promptly exerted to remove every impediment to the enforcement of a lien, especially in cases where such impediment, or obstacle, constitutes a cloud upon the title of real estate.—*Dargan v. Waring*, 11 Ala. 988. And this rule has been held to apply with peculiar propriety to a claim of title set up under an illegal tax-sale, which may intervene to prevent the property from bringing a fair price, when exposed to sale under the decree of the court having jurisdiction to enforce the lien.—Blackwell on Tax-Titles, 491*; *Gillett v. Webster*, 15 Ohio, 623; *O'Brien v. Coulter*, 2 Blackf. 421.

And whether this be regarded as a bill to redeem, under the special prayer for that purpose, or to declare the tax-sale illegal, and the certificate of purchase a cloud on the title of the lands, under the general prayer for relief, it is obviously not multifarious; because the case made by the statements of the bill is that of a *void*, and not of a *valid* tax-sale. The purchasers held a mere certificate of purchase, the tax-deed not having been made or delivered to them. They, therefore, had no title to the lands in question, even if the sale were legal.—*Annan v. Baker*, 49 N. H. 161; Blackwell on Tax-Titles, p. 296.

The sale, however, was not legal, and the purchasers acquired, under or by virtue of it, no rights as against the complainant. They were in possession of these lands, claiming under Ellett,

the original vendee, who had quit-claimed all his interest to
them, and had also transferred to them his bond for title exe-
cuted by his vendor, one McGaha. The rule is settled, in
relation to tax-sales, that a purchase, made by one whose duty
it is to pay taxes, operates, not as a valid purchase, but as a
*payment* only.—Cooley on Taxation, p. 346; *Blake v. Howe*,
15 Amer. Dec. 684, *note.* And it is expressly held, and as we
think properly, that this principle applies to one in possession
of lands under a contract for their purchase. He is not per-
mitted to strengthen his title by purchasing at a tax-sale. His
duty is to pay the taxes, if he desires to perfect his title; and
a purchase by him at tax-sale is, in legal effect, a mere payment.
*Haskell v. Putnam*, 42 Me. 244; *Voris v. Thomas*, 12 Ill. 442;
*Quinn v. Quinn*, 27 Wisc. 168; *Blake v. Howe*, 15 Amer. Dec.
690, *note.* The appellants, Johnston & Seats, under this view,
were not entitled to be reimbursed for the money bid by them
at the tax-sale; and the money tendered by the complainant,
and placed by agreement of parties in the custody of the court
for its disposition, was properly returned, by order of the chan-
cellor, to the complainant. The certificate of purchase was
properly ordered to be cancelled, as a cloud on the title of the
lands purchased, and there was no error in perpetuating the in-
junction, restraining the purchasers from further prosecuting
their proceedings to force the tax-collector to make them a tax-
deed to these lands.

It is contended that no relief can be granted complainant in
this suit, because, it is said, the contract made between him and
Coltart, stipulating for the prosecution of this cause, is void for
champerty and maintenance. It is a sufficient answer to this
argument, that Coltart had a vital interest in the success of this
suit, because the satisfaction of complainant's judgment out of
these lands would enable him, Coltart, to obtain payment of a
claim held by him, out of certain funds in the bankrupt
court, against which both he and complainant had proved, and
which was inadequate for the satisfaction of both debts due by
the bankrupt's estate. The doctrines of champerty and main-
tenance were designed to prevent any mere officious intermed-
dling by strangers, in law-suits in which they have no pecuniary
interest. Where one has such an interest, there is no principle
of public policy, or law, that would forbid his furnishing funds
with which to aid in prosecuting the suit, or which would pro-
hibit his participation in the division of the subject-matter of
litigation, when recovered.—*Thompson v. Marshall*, 36 Ala. 504;
*McCall v. Capehart*, 20 Ala. 521; *Thallhimer v. Brickerhoff*,
15 Amer. Dec. 319, *note.*

Besides, if the contract between Coltart and complainant
were admitted to be champertous and void, its illegality could

in no manner taint or affect this suit. When a party plaintiff can establish his cause of action, without the necessity of proving or relying upon an illegal agreement, in any way connected with it, he cannot be defeated by the plea of illegality, because the connection is then too remote for the one to be affected by the vice of the other.—*Gunter v. Leckey*, 30 Ala. 591. If an attorney, for example, should make a champertous agreement with his client, to receive as a fee half the amount he might recover on a promissory note due him by a defendant for borrowed money, it would come with poor grace from the latter, that he should be exonerated from paying anything on the note because of such illegal agreement between the payee and a third person.

The chancellor did not err in refusing to allow the defendants, Johnston & Seats, to set off the value of the inchoate or contingent right of dower purchased by them from Lydia McGaha in the lands in contention. It is well settled, we think, that while such an interest may be released by the wife, or conveyed by her jointly with her husband, it is not assignable by transfer to a stranger, and such attempted assignment is wholly inoperative as a conveyance.—*Jackson v. Vanderheyden*, 17 Johns. 167 (8 Amer. Dec. 378); *Saltmarsh v. Smith*, 32 Ala. 404; 1 Bish. Marr. Women, § 350; Wells' Sep. Est. Marr. Women, § 367.

It has been, furthermore, settled by this court, in *Martin v. Wharton*, 38 Ala. 637, that such inchoate right of dower is not available as a set-off under the statute, because its precise value can not be measured by a pecuniary standard.

There was no error in the chancellor's rendering a decree in the absence of the original of the exhibit, which purported to be a copy of the title-bond executed by McGaha to Ellett, or of the bond of Ellett and McGaha. The correctness of these exhibits is admitted in the answers, and they are also agreed to be admitted in evidence, by written consent of counsel, without proof of execution.

There can be no question of the power of a Chancery Court to issue a writ of possession, or assistance, for the benefit of one who has purchased land at a sale made under its decree, where the premises are withheld by a defendant, or any one who enters *pendente lite* by his permission, or by a mere trespasser; for all such are concluded by the decree.—*Creighton v. Paine*, 2 Ala. 158; *Trammell v. Simmons*, 8 Ala. 271; *Thompson v. Campbell*, 57 Ala. 183; Code 1876, § 3906. It was the duty of the register, to execute and deliver a deed to the purchaser, within five days after the sale, upon his complying with the terms of the sale, and paying the proper fee for executing the deed.—Code, § 3208. There is no legal objection, which

[Cen. Ag. and Mech. Asso. v. Ala. Gold Life Ins. Co.]

we can see, to the order of the chancellor placing Coltart in possession of the purchased lands, prior to the confirmation of the sale.

It is further assigned for error in this case, that the chancellor improperly dismissed the petition of the appellants, praying for an order securing the growing crops on the premises sold by the register under the decree of the court and purchased by Coltart. There was no error in this, for the reason, that the growing crops are so far regarded as realty, as that they follow the title, and pass with it to the purchaser. This point was expressly so adjudged in the case of *Thweatt v. Stamps,* decided at the last term of this court, and is well settled by authority.—2 Jones on Mortg. § 1658. The appellants purchased the land originally subject to the vendor's lien, and planted their crops, subject to the risk of a foreclosure. It has been held in such cases, that the sheriff or other officer, in selling, has no authority to reserve the way-growing crops, and that, if he were to do so, not making the reservation in the deed delivered to the vendee, it would avail nothing.—*Lowell v. Schenck,* 24 N. J. Law (4 Zab.), 89. The relief prayed was, furthermore, against Coltart, the purchaser, who is not a party to this record, and it was not sought against the appellee in this suit. The question could not be reviewed by this court, in the absence of the party who is so vitally concerned in the result of its decision.

It is obvious, from the above principles, that there is no error in the decree of the chancellor overruling the demurrer, and granting the relief prayed; and said decree is accordingly hereby affirmed.

BRICKELL, C. J., not sitting.